### THE ABILENE OIL COMPANY v. WILLIAM BRISCOE ET AL.

#### Decided November 30, 1901.

**1.—Negligence—Erecting Wire Fence Across Road.**

Defendant's action in erecting a barbed wire fence late in the afternoon across a road used by the public in attending a protracted meeting at a schoolhouse near by, where services were to be held that night, and in leaving such fence unguarded and without signals there to give warning of danger, the ensuing night being quite dark, was such negligence as rendered defendant liable for injury to one who, in going to the meeting, rode into the fence, although an agent of defendant remained there on guard to give warning until the church services had begun.

**2.—Same—Evidence.**

There was no error in excluding evidence by defendant's manager that in erecting the fence he thought he was placing it entirely on defendant's lot, and not partly on the adjoining schoolhouse lot, since the case would still have been one of negligence had the fence been altogether on defendant's lot.

**3.—Same—Pleading—Charge—Issue Raised.**

Where plaintiff's petition for injury received by coming in contact with a wire fence alleged its wrongful erection across the traveled road, and that plaintiff's son, because of his not having been warned of the fence, came in contact with it, but without specific allegation that defendant left the fence unguarded by danger signal or otherwise, this was sufficient to authorize a charge—the evidence admitted without objection so warranting—which allowed the jury to find that defendant was negligent in leaving the fence unguarded and without warning signals, such charge being within the issues raised by the pleading.

**4.—Same—Oral Evidence—Title to Land.**

There was no error in admitting evidence to prove that the trustees of the school district owned the schoolhouse lot over which the road was located, since there was undisputed evidence showing that the trustees were in the possession and control of the schoolhouse lot, and the title thereto was not in issue.

**5.—Same—Charge—Public Way.**

The court properly refused a charge exempting defendant from liability if it exercised ordinary care to prevent injury to persons who might attend the church services that night "during the time persons might be reasonably expected to pass along said road and fence in going to such services," since defendant's act having rendered a public way dangerous, it owed the duty of protection to persons passing along it at any time.

Appeal from Taylor.    Tried below before Hon. N. R. Lindsey.

*Bowyer & Tillet, Hardwicke & Hardwicke,* and *West, Smith & Chapman,* for appellant.

*J. M. Wagstaff* and *D. G. Hill,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by William Briscoe against appellant for himself and as next friend of his 20-year-old son, I. J. Briscoe, for personal injuries inflicted on the latter, whereby he was permanently injured, and has suffered and will suffer great bodily pain and mental anguish, and for the loss of a horse which was killed, and for time lost by the minor from the service of his father, and for drugs and doctors bills in curing him.

Plaintiff alleged that, on September 11, 1900, defendant negligently constructed a barbed wire fence across a traveled road or passway running across a two-acre tract of land alleged to belong to, under control of, and used by the trustees of a public school in Jones County; that such schoolhouse was used for school, religious, and other public gatherings, both day and night, and said passway and road was generally and commonly used by the public to approach the schoolhouse; all of which, it is alleged, the defendant well knew. That on the night in question, to wit, September 11, 1900, said I. J. Briscoe was approaching said schoolhouse where religious services were being held, and that the horse he was riding came in contact with said fence, and I. J. Briscoe was thrown against the fence, whereby the horse was killed and I. J. Briscoe seriously and permanently injured. William Briscoe's damages for doctor's and drug bills, loss of son's service for about ten months, and the value of the horse, being laid at $710, while that of the son was laid at $25,000.

The defendant pleaded a general denial and contributory negligence, in that young Briscoe was riding a fractious and untractable horse at a rapid rate of speed in the nighttime and was heedless, negligent, and careless, and thus contributed to his injury by his own negligence.

The jury found a verdict for William Briscoe individually for $385 and for "I. J. Briscoe, on account of mental and physical suffering, $2000, and the further sum of $4000 as actual damages on account of permanent injuries." Judgment of the court was rendered accordingly, and this appeal is from that judgment.

The record discloses the following facts: The oil mill and gins, wood yard, ginner's residence, and seedhouse belonging to the appellant company were situated on the east side of an uninclosed lot of land covering about three or four acres. The public schoolhouse, which was also used as a church or meeting house for the neighborhood, was situated on the west side of said lot. A public road led into these grounds from the northeast by which people came to the cotton gin, and also to the schoolhouse and church. This three or four acres space seems to have been surrounded by other people's fences except on the north, where the road came in, the road or lane being about twenty-six feet wide, and this road was the only way into these grounds. The appellant owned the east side of the grounds and the trustees of the school district owned, or at least had control and use of, the west two acres. There was a dividing line between the two lots but it seems not to have been clearly defined, and the wood piles of appellant extended across the line into the

school lot some fifty or sixty feet. It became necessary for appellant to fence its grounds on account of the depredations of cattle upon the premises. So on the 11th day of September, 1900, the manager of the appellant company caused a barbed wire fence to be constructed around its premises so as to inclose all of its wood piles, as well as its other property there, and in constructing this fence in order to inclose the wood piles, it was necessary to cross the road that was publicly traveled by people going to and coming away from the school or churchhouse. A protracted meeting of some religious society was going on in a tent close by the schoolhouse at the time, and meetings were being held there every night which the neighbors for miles around were attending, and the manager of appellant knew these facts. The fence was built late in the afternoon of the 11th, and the manager, knowing the danger threatened to persons riding or driving in to church, as the night was dark, guarded it himself until about 8:30 o'clock, so as to turn people away from it, but as the singing services were over and preaching had begun he concluded that all had arrived who would come that night, and left it unguarded with no light or other danger signal to warn people who might come along the road. The young Briscoe came galloping onto the grounds on horseback about 9 o'clock going to the meeting, ran into the fence, killed his horse, and seriously and permanently injured himself. It was dark and he did not see the fence, and did not know it was there. There was some controversy as to whether the manager of appellant knew that the road where the boy was injured was on the schoolhouse lot. There is evidence tending to show that he believed it was on the appellant's lot but the view we take of the case renders this fact immaterial. The facts show, however, that it was on the schoolhouse lot. The evidence was sufficient to warrant the jury in finding the appellant guilty of negligence in constructing this dangerous kind of fence across the road, whether it was on appellant's or the schoolhouse lot, when no danger signals were displayed or other sufficient mode of warning the public adopted. The amount of damages is not excessive, as the young man will be a cripple for life, so the doctors testify, and the verdict is fully sustained by the evidence. The plea of contributory negligence was not proved.

The first assignment of error complains of the exclusion of the evidence of the appellant's manager that he believed while building the fence that he was placing it on appellant's lot.

There was no error in excluding this evidence, for if we concede that the road was all on appellant's lot, it was in constant use then by the public, and he knew it, and it would have been negligence under the facts stated to have put it there when he did, without, on that night at least, placing danger signals on it or by some other means to warn the public away.

This answers also the second and third assignments of error, because whether it belonged to the school trustees or to Williams, the fencing of

it with barbed wire without warnings, under the circumstances, would· have been negligence in anybody.

The fourth assignment is more serious. It complains of the charge of the court given as follows: "A failure to exercise such care and prudence in performing the act as an ordinarily careful and prudent man would exercise under the same or like circumstances and conditions, is ordinarily negligence, and in this case, if you find from the evidence that the defendant, the Abilene Cotton Oil Company, in constructing said fence on said land and across said road or passway, if it did so, failed, under the facts and circumstances in evidence before you, to exercise such care and prudence as an ordinarily careful and prudent man would have exercised under the same or like circumstances, then such failure on defendant's part would constitute negligence."

Under this assignment the able counsel of appellant submits this proposition: "The court should not submit an issue not raised by the pleadings, and in this case the plaintiffs having declared upon an affirmative act only, and not declaring on negligence arising by reason of an act of omission, the court in its charge authorized a recovery if omission was shown, when no act of omission was charged. The evidence showing the character of fence, its manner of construction, and want of warning, etc., the jury was authorized to find for plaintiff on such grounds when such were not alleged."

The allegation in plaintiff's petition is as follows: "That on or about the 11th day of September, 1900, the defendant, said corporation, and John Guitar, well knowing that the said road was used by the public for access to said school building, and well knowing that the said open ground was used and controlled by the trustees of said public school, and that it was open and left open for the use and benefit of the general public, recklessly, negligently, carelessly, and knowingly constructed a barbed wire fence, well knowing the danger to the traveling public therefrom, on, over, and across said open space on said school grounds, and extended said fence west to near said schoolhouse and in-closed a large portion of said school grounds and obstructing the road leading to said schoolhouse and left no road to approach said schoolhouse except a very narrow passway that was grown up in timber on the north line of said open space. That when said fence was built and said road obstructed, protracted religious services were going on each night at said schoolhouse, which fact was well known to defendant. The defendant was warned and commanded and ordered not to build said fence and not to obstruct said road and school ground. That defendant built said fence in order to care for and protect the property of defendant, and it was built for the use and profit and benefit of defendant corporation. That defendant knew and had knowledge of the extreme danger of said wire fence to the public and to the plaintiff when said fence was constructed by them."

This allegation, it will be observed, does not in terms complain of the defendant's failure to display danger signals or otherwise· warn the pub-

hc of the danger of coming in contact with the fence, but simply that they recklessly, negligently, and carelessly constructed the fence, etc. But following this allegation we find it in the same connection alleged: "That on the night after the construction of said fence, I. J. Briscoe was lawfully going to church riding his horse, and arrived near Delk schoolhouse a short time after dark, and was traveling the said road leading to the said schoolhouse at a moderate rate of speed, when, on account of the darkness, and his not having been warned of the fence, and having no knowledge of its being built his horse came in contact with said wire fence," etc.

This latter allegation,—" and his not having been warned of the fence and having no knowledge of its being built,"—even if we adopt the appellant's contention that the general allegation of negligence in constructing the fence is not sufficient, we interpret to mean that no danger signals were displayed or other warnings given by the appellant to warn the injured party or the public of the dangerous obstruction placed across the highway; and by reason of the reckless building and the failure to warn, the injury occurred. At all events we have concluded that the charge was warranted by the allegation. The evidence of failure to display danger signals or guard the fence sufficiently was abundant, and no question of want of allegation to support the evidence was made, so that it seems that appellant considered the allegation sufficient to admit such evidence, and if it is sufficient for the one purpose it must be held so for the other.

The fifth assignment complains of the admission of oral evidence to prove that the trustees of the school district owned the schoolhouse lot over which the road was located. The title to the lot was not an issue in the case, but there was no material error, if error at all, in admitting the evidence, as the bill of exceptions shows that the same witness testified that the school trustees were in possession of, and used and controlled the schoolhouse and lot where the road lay, and this was undisputed and answered every purpose in this case which ownership would have done.

There was no error in admitting the evidence complained of in the sixth assignment. It only tended to establish that the appellant's agents knew that the road was on the schoolhouse lot, and while we consider it of little importance under the circumstances of this case who owned the land where the road ran, it certainly was not error to prove that the appellant knew it belonged to the school trustees.

The seventh assignment complains of the court's refusal to give the following charge: "The jury are instructed, that although you believe from the evidence that the defendant company, in erecting the fence in question, under the facts and circumstances existing in this case, owed a duty to those who attended the services conducted that night on said property, nevertheless, if you find that defendant company, by its agent, exercised ordinary care to prevent injury to persons who might be

reasonably expected to attend said services and during the time persons might be reasonably expected to pass along said fence in going to said services, then plaintiff can not recover."

This charge was properly refused. If the obstruction of the public way was dangerous, the party who places it there must warn and protect people against coming in contact therewith at all times, whether they might be reasonably expected to attend services and pass along there or not. He has no more right to injure people who pass along there at unreasonable hours by such dangerous obstructions than he has those who pass only at reasonable hours.

There is no merit in the eighth assignment, as already shown.

The ninth is answered by our remarks relating to the seventh.

The tenth complains of a charge which was declared to be correct in Railway v. Weigers, 22 Texas Civil Appeals, 344, and we therefore overrule the tenth.

The eleventh and twelfth complain of the court's failure to charge the jury on certain phases of the case. Counsel should have requested such charges if deemed important.

The thirteenth, fourteenth, and fifteenth are without merit. In fact there are eighteen more such assignments, making a total of thirty-three, and while we have examined them separately and carefully, we find no material error in any of them, and no question raised which it would be profitable to discuss. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.