### NIMMO v. O'KEEFE.   (No. 8885.)

(Court of Civil Appeals of Texas. Ft. Worth. May 25, 1918.)

1. LANDLORD AND TENANT ☞28(1)—"MATERIAL MISREPRESENTATION."

Where leasing of plaintiff's premises was done by others so that plaintiff did not know who were his tenants, representation by defendant seeking a lease that he was tenant occupying premises was material where plaintiff in reliance on representation made lease which he would not otherwise have made (quoting Words and Phrases, Second Series, Material Misrepresentation).

2. PLEADING ☞430(2) — VARIANCE — WAIVER.

In action to cancel lease, although plaintiff's petition alleged that defendant made false representation, where testimony was admitted without objection that representation was made by another in defendant's presence and with his acquiescence, defendant waived objection as to variance; variance not going to substance of plaintiff's cause of action.

3. PLEADING ☞380—VARIANCE.

A party must first plead facts which proof offered tends to establish, before such proof will be admissible or, if admitted without objection, will avail him anything.

4. PRINCIPAL AND AGENT ☞92(1)—ACTS OF AGENT—LIABILITY OF PRINCIPAL.

If act of agent be a lawful one done in name and in behalf of principal and by implied or express authority, principal is bound as fully as if he himself had acted.

5. APPEAL AND ERROR ☞1043(5) — HARMLESS ERROR — ENJOINING INTERFERENCE WITH TENANTS.

In suit to cancel lease and enjoin defendant from interfering with plaintiff's tenants, where evidence showed that defendant was asserting his right to oust tenants and take possession, he was not substantially injured by injunction granted, although there was no evidence that defendant by threats or by summary process was seeking to oust tenants.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by C. A. O'Keefe against Charles Nimmo. Judgment for plaintiff, and defendant appeals. Affirmed.

Bryan, Stone & Wade and W. C. Blalock, all of Ft. Worth, for appellant. Marvin H. Brown and Bradley & Burns, all of Ft. Worth, for appellee.

BUCK, J. C. A. O'Keefe brought this suit in the district court of Tarrant county against the defendant, Charles Nimmo, to cancel a certain lease contract theretofore made and entered into between plaintiff and defendant, alleging that defendant made false and fraudulent representations to plaintiff, which induced the latter to execute the lease in controversy; the alleged fraudulent representations being that defendant, in order to induce plaintiff to enter into the contract, stated that he (defendant) was already the tenant occupying the premises on which he desired a lease, but that he wanted a lease for a period of two years and was willing to pay plaintiff the additional amount of $2.50 more per month for such lease contract. Plaintiff alleged that defendant was not his tenant, and such statement that he was was false and fraudulently made for the purpose of obtaining the lease, and that, had he (plaintiff) known the truth, he would not have accepted defendant as a tenant and made the lease contract, but that he relied upon said false statement and representation, and was deceived thereby, and executed the lease upon the premises. Plaintiff further alleged that good solvent tenants were hard to obtain, and that he was satisfied with the tenants then occupying and holding the premises. He further alleged that defendant was molesting the tenants then in possession and was seeking to oust them from said possession, claiming to be entitled to the possession, and "that should the defendant, by his false threats or any other means, dispossess said tenants, he will cause irreparable injury to the plaintiff, for the reason that it is difficult to secure desirable solvent tenants who will take proper care of the premises and pay the rents promptly and perform other obligations required of the tenants; and it is therefore uncertain when the plaintiff could secure any other tenants who would be satisfactory to him." The petition concluded with a prayer for a writ of injunction enjoining the defendant from molesting or attempting to dispossess the said tenant, and for a decree canceling the lease. The court granted the injunction upon the representation of the application, and upon a hearing on the merits the case was tried before a jury on special issues. A verdict having been rendered favorable to plaintiff, judgment was rendered for plaintiff canceling the lease and perpetuating the injunction. The defendant has appealed.

[1] Appellant's first assignment complains of the action of the court in overruling his general demurrer to plaintiff's petition. It is urged that the representations alleged by plaintiff to have been made by defendant, and which were alleged to be false and fraudulent, are not upon a material issue; that the petition fails to show that injury would result to plaintiff if the writ of injunction should not be granted. Appellant cites 9 Corpus Juris, 1235, § 151, as authority to sustain his contention that the petition is bad as against a general demurrer. In treating of "Cancellation of Instruments" there, the text uses the following language:

"The bill of complaint should show that the misrepresentations made were material, and that complainant believed that the misrepresentations made by defendant were true and acted in reliance thereon. The rule in such case is that a misrepresentation in order to affect the validity of a contract must relate to some matter of inducement to the making of the contract in which from the relative positions of the parties and their means of information the one must necessarily be presumed to contract on the faith and trust which he reposes in the representations of the other on the subject of the contract. A bill which shows that before the execution of the instrument sought to be rescinded plaintiff was in any manner informed of the falsity of defendant's representations is without equity."

In section 152, p. 1236, of the same work, it is said:

"It is also essential that the bill of complaint should show that injury has resulted to complainant from the misrepresentations. However, it would seem that the precise amount of damages sustained need not be alleged, as is necessary in an action for deceit."

The evidence suggests: That the plaintiff was the owner of a number of rent houses and buildings in the city of Ft. Worth, and that the collection of his rents had been intrusted to an agent, and that he did not in many instances know who his tenants were. That F. C. Burge had been for some time prior to the transaction in question the agent who looked after the renting of plaintiff's property and the collection of the rents, but that shortly prior thereto Burge had given up his position as agent, and had recommended a Mrs. Stewart to take charge of this agency for the plaintiff, and that plaintiff had accepted Mrs. Stewart as his agent for said purpose. That some time during September, 1915, the defendant and F. C. Burge called at the home of plaintiff for the purpose of securing for defendant a lease contract for two years on certain property at 102 West Exchange Avenue. During this conversation, Burge, who it appears was spokesman for defendant, stated to plaintiff that he had come with defendant in order to secure the lease; that he had promised defendant that, before he would give up the rental agency and turn the same over to Mrs. Stewart, he would let defendant have the building in question; but that he had put it off from some cause or other from time to time and had not made a contract of lease with defendant at the time he ceased to handle plaintiff's business. The defendant had been a good tenant, and had been renting from month to month, but that defendant wanted to put some improvements on the place and was willing to pay an increased rental of $2.50 per month; the rent for the premises theretofore being $35 a month. That in order to secure said two years' contract he would place the improvements needed at his own expense and pay the increased

rental. Plaintiff informed Burge, in the presence of defendant, that he did not know defendant, did not know all the tenants that were in the building, but that if defendant was the regular tenant, and had been such tenant, he would make with him the desired contract, because he wanted to give the tenants in possession the refusal of the premises. Plaintiff testified that at this time Burge was not his agent, and that Burge did most of the talking; that Burge told him that defendant had been a good tenant and had paid the rent promptly; that he relied upon the representation that defendant was the tenant in possession. That he had been sick and in the hospital for a long while and that in many instances he did not know who his tenants were. That he told Burge to have Mrs. Stewart draw up the contract with defendant. This contract, offered in evidence by defendant, is signed by defendant and by Burge as agent for plaintiff. Plaintiff further testified that when he learned the next day that defendant was not in fact the tenant in possession of the premises sought to be leased, but that other parties were in possession and using and occupying the same as tenants, and that these other parties desired to continue to occupy said premises, he at once saw Burge and defendant, and told them that they had misrepresented the facts to him, and that he wanted them to tear up the contract that he had had Mrs. Stewart to write and leave the tenant already occupying the building in charge. It does not seem to be seriously contended by appellant that he was the tenant in possession of the premises at the time of the conversation at plaintiff's home, and the execution of the contract of lease. He denies, however, that he so stated to plaintiff, or that Burge so stated in his presence or for him.

We do not question the soundness of the doctrine relied on by appellant and expressed in the quotation from Corpus Juris, set out above, to the effect that, in order for a petition or complaint to establish grounds for cancellation of a written instrument on the ground of fraud or misrepresentation, the petition and proof must both show that the alleged misrepresentation was to a material fact. But we are not prepared to hold that the statement imputed to appellant that he was at the time he sought the lease contract the present tenant of plaintiff, occupying the premises, was not as to a material fact. It may be true that the defendant below would have proven himself as tenant just as satisfactory to plaintiff as the tenant already in possession of the premises, and that, in fact, it would have been financially to plaintiff's advantage to have accepted defendant as a tenant at an increased rental, but a landlord has a right to select his own tenants and to determine which one of several applicants for a lease contract he shall accept. The test of materiality on the statement imputed to defendant does not depend upon the question as to whether plaintiff would have been financially injured by accepting defendant as a tenant, but upon the question as to whether or not if the statement that defendant was then the tenant in possession of the premises had not been made, and if plaintiff had not relied thereon, and had not made the agreement or contract of lease by reason of such reliance, he would not have made the contract at all. Appellee cites as authority under this assignment the words of our Saviour found in Matthew 20: 15, to wit: "Is it not lawful for me to do what I will with my own?" Doubtless no higher authority could be invoked, and it might not be inappropriate for us to conclude that the legal profession, including counsel for appellant, would accept the announcement made by the Son of Man as decisive of the question here involved; but, be that as it may, courts of the land have recognized the applicability of the principle laid down by the supreme authority cited:

"A misrepresentation, as a basis of rescission, must be material; but it can be material only when it is of such character that, if it had not been made, the contract would not have been entered into. The misrepresentation, it is true, need not be the sole cause of a contract; but it must be of such nature, weight and force that the court can say, 'Without it the contract would not have been made.'" 3 Words and Phrases 320, citing authorities.

See, also, 1 Black on Rescission and on Cancellation, p. 169, § 70:

"A fact is material when it influences a person to enter into a contract, or when it deceives him and induces him to act, or when without it the transaction would not have occurred."

To the same effect is 12 Ruling Case Law, § 61, p. 229.

The testimony of plaintiff shows that he asked Burge in the presence of defendant if defendant was then the tenant in possession, stating that he did not desire to disturb satisfactory tenants already in possession of his property, and that Burge, in defendant's presence and without any denial on the part of defendant, stated that defendant was the tenant in possession of the premises. Plaintiff further testified that he would not have agreed to make the contract except for his reliance upon this statement that defendant was the tenant then in possession. Hence we concluded that we cannot disturb the judgment on the ground that the misrepresentation imputed to defendant was not a statement of a material fact.

The court submitted the following issues which were answered as indicated:

"Q. 1. Were any representations made to the plaintiff O'Keefe by the defendant Nimmo or by F. C. Burge in the presence of the defendant Nimmo? (Answer yes or no.) A. Yes.

"Q. 2. (If you have answered question 1, in the affirmative, then answer:) Were the representations made to plaintiff O'Keefe by the defendant Nimmo or by F. C. Burge in the presence of the defendant Nimmo, substantially those representations alleged in plaintiff

O'Keefe's petition? (Answer yes or no.) A. Yes.

"Q. 3. Were any representations made to the plaintiff by F. C. Burge in the presence of the defendant Nimmo? (Answer yes or no.) A. Yes.

"Q. 4. (If you have answered Q. 3 in the affirmative, then answer:) Were the representations so made to plaintiff O'Keefe by F. C. Burge in the presence of the defendant Nimmo, substantially those representations alleged in plaintiff O'Keefe's petition? (Answer yes or no.) A. Yes.

"Q. 5. (If you have answered that representations substantially those alleged in plaintiff's petition were made to the plaintiff O'Keefe by F. C. Burge in the presence of the defendant Nimmo then answer:) (a) Did the defendant have knowledge of such representations? (Answer yes or no.) A. Yes. (b) Did he object thereto? (Answer yes or no.) A. No. (c) Did he acquiesce therein? (Answer yes or no.) A. Yes.

"Q. 6. (If you have answered that the defendant Nimmo or that F. C. Burge, in the presence of and within the knowledge and acquiescence of the defendant Nimmo, made substantially the representations to plaintiff O'Keefe alleged in plaintiff's petition, then answer:) Did the plaintiff O'Keefe rely upon such representations if any, in executing the lease in question? (Answer yes or no.) A. Yes."

Assignments 2, 3, 4, 5, 6, and 7, are directed to the submission of these six issues; the objections being substantially the same. It is urged that the facts show that the misrepresentation claimed to have been made by defendant was in fact made, if at all, by F. C. Burge, and that there is nothing in the evidence to show that the defendant authorized Burge to make said misrepresentations or any representations at all, and there is no pleading to the effect that any representation was made by Burge for and on account of the defendant.

[2] It is futher urged that special issues 3, 4, 5, and 6, are cumulative and unduly stress the matters and issues presented therein and are on the weight of the evidence, suggestive, leading, and prejudicial to the rights of the defendant. It is true that in his petition plaintiff alleges that the misrepresentation was made by defendant, but none of these assignments under consideration attack the ruling of the court in admitting testimony, on the ground of variance, which testimony seems to have been admitted without objection. It has been held that, where evidence is admitted without objection, the question of variance cannot be raised upon an instruction to the jury. International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93, and Supreme Court authorities there cited; Greenwood v. Anderson, 8 Tex. 225; Oil Co. v. Brisco, 27 Tex. Civ. App. 157, 66 S. W. 315, writ refused. The evidence sustains the conclusion reached by the jury that the defendant acquiesced in the representations made by Burge in his presence. The evidence further sustains the conclusion that, in seeking to secure the contract of lease for defendant, Burge was acting as defendant's agent, and that defendant knowingly permitted Burge

to make the statements in regard to the tenancy of the building and acquiesced therein, and adopted said representations as his own. The case of Lewis v. Hatton, 86 Tex. 533, 26 S. W. 50, held that under a petition alleging that the sheriff had unlawfully taken possession of certain property proof was inadmissible that a deputy of the sheriff had made such levy. But here the testimony was objected to when offered, and the Supreme Court reversed the judgment of the Court of Civil Appeals and the trial court, on the ground that such testimony was inadmissible against objection seasonably urged and constituted a variance between the allegata and the probata. See Tarver v. Carter, 42 S. W. 229. In Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112, cited by appellant, it was held that the fact that evidence not within the issues pleaded was admitted without objection would not authorize a charge thereon. But, from a careful reading of that case and the authorities there cited, it will be found that the proposition of law there enunciated is not a rule of evidence but rather a rule of pleading. One must allege in his pleadings the essential grounds of his recovery, or of a special defense, and evidence admitted, though without objection, will not avail the litigant unless it be in support of allegations made in his pleadings.

[3, 4] In other words, the party must first plead the facts which the proof offered tends to establish before such proof will be admissible, or, if admitted without objection, will avail him anything. In the instant case the cause of action would have been the same had the misrepresentation been alleged to have been made by the principal or by the duly authorized agent, for it is a well-recognized maximum of agency, "Qui facit per alium facit per se"; and if the act of the agent be a lawful one done in the name and in behalf of the principal, and by the principal's implied or express authority, the principal is bound as fully as if he himself had acted in the premises. The contract made or the obligation assumed is just as binding in one case as in the other. If the party who attempts to bind the principal seeks to show that the principal's liability arose by reason of the acts or words of a duly authorized agent, and no objection is made, at the time such evidence is offered, to the manner of proof, the adverse party waives any objection on the ground of variance. 31 Cyc. 723. The variance in this instance does not go to the substance of plaintiff's cause of action, as in the cases relied on by appellant, but merely to the manner or mode of proof. Mekos v. Fricke, 159 Mo. App. 631, 139 S. W. 1181–1183; Baldwin v. Polti, 45 Tex. Civ. App. 638, 101 S. W. 543, writ denied, cited in Orient Land Co. v. Reeder, 173 S W. 939–941. Since in Baldwin v. Polti, supra, the Supreme Court has, by refusing a writ of error, approved the hold-

ing of the Court of Civil Appeals for the Fourth District that, in a case where there was no question as to the agency of a certain person and his authority to act for the defendant, the agent's actions within the scope of his agency supported an allegation that they were the acts of the defendant, and that an objection to the submission to the jury of the question of the principal's liability for the agent's acts was not tenable, we are of the opinion that the objection to the submission in this case of the issues of fact herein above set out should be overruled on the same ground and for the same reason given in the cited case.

Hence we overrule assignments 2, 3, 4, 5, 6, 7, and 8, which last assignment urges that the court erred in submitting any issues to the jury upon the alleged cause of action, because of a fatal variance between the pleadings of the plaintiff and his proof. We also overrule assignments 9, 10, 11, and 12 for the reasons heretofore given.

[5] The thirteenth assignment complains of the judgment as being contrary to and wholly unsupported by the pleadings and the evidence, in that plaintiff pleaded that defendant was molesting and annoying and attempting to dispossess plaintiff's tenants in the building, naming Clayton and Brown as such tenants, while, it is claimed, the evidence fails to show that defendant at any time attempted to dispossess or annoy or in any way interfere with said named tenants. It is further urged that the evidence affirmatively shows that Clayton and Brown were not plaintiff's tenants, but that they paid the rent to one Bober, who in turn paid rent to the plaintiff, and there is no evidence that defendant has ever disturbed or annoyed said Bober.

Brown testified:

"I am Mr. O'Keefe's tenant now. I am paying Bober the rent, and he pays it to Mr. O'Keefe."

Bober testified:

"I formerly bought the tailor shop and the barber shop located at 102 West Exchange avenue. I sold the barber shop to Brown and Clayton, and I sold the tailor shop to Mr. Nimmo, the defendant here. I sold first to Brown and Clayton. * * * And after that time I sold the tailor shop to Mr. Nimmo. In September, 1915, I had a lease on the room at 102 West Exchange; I had been renting it I guess, for about two or three years before that. When I sold to Brown, I sublet that part of it to him. * * * Brown and Clayton are paying $17.50, and I am paying $17.50 out of my pocket, and have been ever since September, 1915. I am paying $35 to O'Keefe, and $17.50 of that is out of my own pocket. I am collecting $17.50 from Brown and Clayton and paying that over to O'Keefe. I am in charge of the building, and Brown is subleasing from me."

Defendant testified that, in making the lease contract with plaintiff, it was his intention to get possession of that portion of the premises occupied by the barber shop of Brown and Clayton. On the other hand, Bober testified that, in his negotiations with Nimmo, the latter stated that he would not interfere with them in any way; that the witness stated to defendant that, if there was to be any change he wanted to tell Brown and Clayton of it, and also the tailors occupying the adjoining premises, but, upon defendant's assuring him that there would be no change with reference to these tenants, the agreement to trade was concluded. The evidence shows that defendant caused the lease to be filed for record on September 18, 1915, the day subsequent to its execution. We think it is evident from the testimony that at the time of the filing of the suit the defendant was insisting upon his right to take possession of the premises under the lease contract made with plaintiff. Though the record is barren of any evidence tending to show that defendant by threats or violence or by summary process of law was seeking to oust Clayton and Brown, yet it is apparent from the record that he was asserting the right to oust them and to take possession of the premises. In a broad sense, Clayton and Brown were the tenants of plaintiff, though they had rented directly from Bober. "A 'tenant' is one who occupies the lands or premises of another in subordination to the other's title, and with his assent, express or implied; but, in order to create the relations, the two elements must concur." Francis v. Holmes, 54 Tex. Civ. App. 608, 118 S. W. 881, cited in 4 W. & P. 868. The main purpose of the suit was to cancel the contract of lease, and we cannot see that any substantial injury has been suffered by defendant in perpetuating the writ of injunction, even though it may be admitted that at the time of the filing of the suit defendant was doing no overt acts to oust Clayton and Brown from the premises occupied by them as a barber shop.

All assignments are overruled, and the judgment is affirmed.

Affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.