### Northwestern Life Association v. Mrs. M. A. Findley et al.

#### Decided May 17, 1902.

**1.—Life Insurance—Delivery of Policy—Waiver.**

Where a life policy provided that it should not become operative until the first payment was made and the policy actually delivered to the insured while in good health, and further that agents had no authority to alter or discharge any contract in relation to the insurance or waive any forfeiture thereof, and an agent having authority to collect premiums and vested with discretion to withhold delivery of a policy where he found the insured not in good health, collected the premium and delivered the policy, knowing then that the insured was not in good health, the contract of insurance became thereby completed and binding on the company.

**2.—Same—Ratification—Retaining Premium.**

Where in such case the premium was paid before the policy was delivered, and the insured lived for six weeks after its delivery, and the insurance company took no steps during that time to repudiate the agent's act, or to return the premium or revoke the policy, it thereby ratified the delivery.

**3.—Same—Misrepresentations by Insured—Materiality—Issue for Jury.**

Where the law of the contract provided that no misrepresentation by the insured shall be deemed material, or avoid the policy, unless it is made with actual intent to deceive or defraud, or unless the matter misrepresented increased the risk of loss, and the insured falsely stated that he had never had any disease of the urinary organs or sought medical treatment therefor, it was proper for the court to submit for determination by the jury the issues of whether the statements were false, and if so, whether they were made with intent to deceive or defraud and increased the risk of loss.

**4.—Same—Release by Beneficiary—Fraud.**

Where an insurance adjuster procures from the beneficiaries, for an amount less than the sum insured for, a release in full of the claim under a policy, by fraudulently representing that the policy was void because of not having been delivered to the insured during good health, such release is not binding on the makers.

**5.—Same—Return of Money Paid for Release.**

In an action upon an insurance policy the defendant company can not complain of plaintiffs' failure to return money paid them upon an invalid agreement of release where the sum so paid was credited on the amount of plaintiffs' recovery.

Appeal from Hill. Tried below before Hon. William Poindexter.

*Ivy & Scruggs* and *Jo Abbott,* for appellant.

*A. P. McKinnon* and *L. A. Carlton,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—Mrs. M. A. Findley and her husband brought this suit on a policy of insurance for $2000, payable to her, issued by the Northwestern Life Association on the life of Byron S. Findley, a son of appellees. On a jury trial they obtained a judgment, from which the association has appealed.

1. The policy contained a clause which reads as follows: "This policy shall not become operative so as to bind the association until the first payment is made hereon and the policy is actually delivered to the insured herein named while in good health." The policy was issued at appellant's general offices in Minneapolis, Minn., and bears date on December 11, 1899. Appellant proved that the policy was mailed to R. U. Barnes, its agent at Hillsboro, Texas, to be by him delivered to the insured. It takes about forty-eight hours for a letter to be carried by mail from Minneapolis to Hillsboro. On December 16, 1899, the insured was seized with a sickness which terminated in his death on January 28, 1900. Barnes did not testify on the trial, and it was not shown when he received the policy or delivered it to the insured. The evidence is sufficient to show that he did deliver it. Appellant pleaded the said clause of the policy, and that the policy, if it was delivered at all, was delivered when the insured was not in good health, and that therefore the policy never became operative. It seems that the first premium was paid before the policy was issued, and it may be doubted whether said clause was intended to apply in such case. Insurance Co. v. Harris, 57 S. W. Rep., 635. It appears that the clause in question was inserted in the blank forms of appellant's policies to cover cases where payment of the first premium was not made until after issuance of the policy. If this construction is correct, then the said clause is without application in this case, and appellant's defense based thereon must fail. The trial court, however elected to accept appellant's theory that the said clause applied, and we will consider the question whether, on that theory, any error is shown.

On the theory that said clause was applicable, appellees sought to avoid the effect thereof by showing that if the insured was not in good health when the policy was delivered, the fact was known to appellant's said agent who delivered the policy, at the time of delivery. On the other hand appellant claims that even if its agent delivered the policy knowing that the insured was not in good health, the delivery was not binding on it because of a provision of the policy which reads thus: "It is mutually agreed that agents or collectors have no authority to alter or discharge any contract in relation to this insurance, or to waive any forfeiture thereof."

Appellant requested a special charge instructing the jury to return a verdict in its favor if they found that the policy was delivered while the insured was not in good health. The charge was refused and error is assigned thereon.

It is clear that if the association, with full knowledge of the facts, elected to deliver the policy while the insured was not in good health, tak-

ing the chances of his sickness being merely temporary, and of no consequence, such delivery would operate as a consummation of the contract and the policy would be effective from the time of delivery, notwithstanding the said clause relating to delivery while the insured was in good health. As the association is a corporation, it can act only through its officers and agents, and any officer or agent empowered to act for it in respect to a particular matter is the representative of the association in that behalf and his acts done within the scope of his powers are binding on the association, although the contract contains a general clause declaring that agents shall have no authority to change the contract or waive a forfeiture. Such provision of the contract must be held to relate to agents who have not authority to act for the corporation in regard to the matter in issue, since to hold otherwise would deprive the corporation of the power to transact its necessary business and carry out the objects and purposes of its creation.

If Barnes, the agent of appellant who delivered the policy, was, in respect to delivering the policy, a mere clerk, having no discretion in the premises and being bound to deliver the policy when received regardless of the condition of the health of the insured, and being without authority to collect the premium, then it would seem that the association would not be bound by such delivery, if the insured was not in good health, unless it ratified his act after becoming acquainted with the facts. But if he might, in his discretion, withhold delivery of the policy in case he found the insured not in good health and possessed authority to collect the premium, and having collected the premium, and knowing the insured was not in good health, delivered the policy, the association was bound by his acts and the contract was thereby completed. It is not denied that Barnes was the agent of appellant. He solicited the insurance and took and forwarded the application. He collected and receipted for the first premium. The association accepted the risk, appropriated and retained the premium, issued the policy, and sent it to Barnes for delivery. He delivered the policy with full knowledge of the condition of the health of the insured. There is no intimation that Barnes acted otherwise than in good faith toward his principal or that the insured was guilty of fraud in procuring the policy to be delivered. The association knew the precise limits of its agent's authority, but did not on the trial disclose the same. We are of opinion that, under the circumstances, the trial court did not err in refusing to assume as matter of law, as requested by the special charge, that the delivery was not binding on appellant because the insured was not in good health at that time.

There is another reason why the refusal of the special charge was not error. It was about six weeks from the time the policy was delivered until the death of the insured. Appellant held the premium during that time, and knew, through its agent Barnes, the condition of the health of the insured, but did not repudiate his act in delivering the policy or take any steps to revoke or cancel the policy. The knowledge of Barnes concerning the health of the insured should be imputed to his

principal, and its failure to act amounted to a ratification of the delivery. Morrison v. Insurance Co., 69 Texas, 353.

There is no complaint as to the manner in which the issue was submitted in the charge given, the only contention being that, if the insured was not in good health when the policy was delivered, appellant was entitled to a peremptory instruction to the jury to return a verdict in its favor. The contention is not well taken and the assignment is overruled.

2. In response to questions propounded by the examining physician of the association, the insured stated that he did not have and never had any disease of the urinary organs, and that he had not personally consulted a physician, been prescribed for, or professionally treated within the last five years. These statements were declared to be a part of the policy and to be warranties. As a matter of fact, the insured, not long before he applied for insurance, had been afflicted with a disease of the urinary organs and had been treated therefor by a physician. Appellant pleaded and relied on these facts to defeat a recovery on the policy. The policy provides that it shall be interpreted under and by the laws of Minnesota, and appellees pleaded and proved a provision of the statutes of that State which reads as follows: "No oral or written misrepresentations in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive or defraud, or unless the matter misrepresented increases the risk of loss." The trial court construed the policy according to the laws of Minnesota and submitted to the jury the issues whether the representations were false, and if so, whether the same were made with intent to deceive and defraud or increased the risk of loss. No complaint is made of the action of the court in treating the policy as a Minnesota contract, but it is contended that the evidence shows conclusively that the representations were false, and that as a matter of law the question whether the insured had sought medical advice was material, and that therefore the court erred in submitting that issue to the jury.

The case of Insurance Company v. Harris, supra, is relied on to sustain the contention. There the insured, shortly before he took out the policy, suffered from a severe attack of la grippe and was treated therefor by a number of physicians. On his examination he misrepresented the facts in regard to this matter and died of consumption not long after he obtained the policy. The contract was construed according to the laws of Pennsylvania, where there is a statute which provides "that, hereafter, whenever the application for a policy of life insurance contains a clause of warranty of the truth of answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant shall effect a forfeiture or be a ground of defense in any suit brought on any policy of insurance issued upon the faith of

such application, unless such misrepresentation or untrue statement relate to some matter material to the risk" It was shown that the courts of Pennsylvania have construed the said statute and held that misrepresentations such as were shown in the Harris case were material as a matter of law, and it was held by our Supreme Court in the Harris case that the issue as to the materiality of the misrepresentations should not have been submitted to the jury but should have been decided by the court in favor of the insurance company.

We think there is a clear distinction between that case and the case at bar. The statutes of Pennsylvania and Minnesota are not identical. Under the law of Pennsylvania the misrepresentation would avoid the policy if it related to some matter material to the risk, while under the law of Minnesota the misrepresentation will not defeat the policy, unless the matter misrepresented increases the risk of loss. The question whether an applicant for insurance has been previously treated professionally is necessarily a material inquiry, but if he was treated for a sickness which was of no importance, the representation that he had not been treated did not increase the risk of loss.

It was shown in this case that the disease with which the insured was affected was a trifling one, that he was entirely cured, and that his death was not attributable to the disease. It appears that after one who has been afflicted with such disease is cured thereof, the fact that he was so afflicted does not impair his health or diminish his life expectancy. Such being the case, we are unable to see how the fact that the insured made untrue statements in that respect can be said, as a matter of law, to have increased the risk of loss. In the Harris case the attack was severe and the disease of the most serious character, and it is not clear that the insured was ever cured of it or that death was not caused by it. Under such a state of the facts, the question whether the insured had been theretofore treated professionally and by what physicians clearly related to a matter material to the risk. And it is pertinent to note that our Supreme Court in discussing the case said: "It may be true that an error in statement in an application concerning medical attention might in some cases appear to be immaterial, but this can not be said as to those in this case." The inquiry concerning medical attention is, in some sense, material in every case, but an error in statement in regard thereto does not increase the risk of loss, if the attention was given for some insignificant ailment which had been cured and which did not affect the general health of the applicant and did not contribute to the cause of his death. We conclude that the trial court did not err in leaving the question to the decision of the jury.

3. Some five or six weeks after the death of the insured, one Holcomb, an adjuster of appellant, came to Hillsboro to look into the matter. The insured died at Hillsboro and was treated during his sickness by Dr. Dudley, who, to secure payment for his services, procured appellees to assign the policy to him. Appellees lived in Leon County, and Holcomb induced Dr. Dudley to telegraph them to come to Hillsboro.

Appellees came in response to the telegram, arriving after dark. They were met at the depot and taken to a hotel. Holcomb and Dudley were there, and Holcomb told them that he did not consider the policy valid, because it was not delivered to the insured while he was in good health, and that the association was not therefore liable to them in any sum whatever, but that he was willing to pay Dr. Dudley's bill and the funeral expenses of the insured and his little bills around town, aggregating $550. Appellees agreed to the proposition, and a release reciting a consideration of $550 was prepared by Holcomb and executed by appellees. Holcomb made out a check payable to appellees and had them assign it to Dr. Dudley, who was to apply the proceeds of the check in accordance with the agreement. Appellees then left, and as soon as they had time for consideration and advice decided not to abide the settlement and to claim the full amount of the policy. Appellees were ignorant and inexperienced and knew nothing of the law governing their right to collect the policy. Dr. Dudley, on the morning after the settlement was made, cashed the check and was proceeding to pay out the money received when he learned that appellees had repudiated the settlement. Appellees personally never received any part of the money. No part of it has been returned to appellant. The trial court instructed the jury, in case they found for appellees, to allow a credit on the policy for the said sum of $550, which was done.

The court charged the jury that if Holcomb believed that the policy was not valid and acted in good faith in so declaring, then the settlement was binding on appellees, but that if he did not so believe and his claim that the policy was void was not made in good faith, but was simulated and a mere pretense and made with intent and for the purpose of misleading appellees and inducing them to enter into the compromise in order to escape liability for the entire amount of the policy, then the release would not prevent a recovery by the appellees. The latter clause of the charge is evidently based on the theory that in the case stated there was no sufficient consideration for the release, and follows the law as declared by the Austin Court of Civil Appeals in Insurance Company v. Villeneuve, 25 Texas Civil Appeals, 356. We concur in the views expressed in the case cited and approve the charge of the trial court on this issue.

It is urged that before appellees could have the settlement set aside they were bound to tender back the money received. In fact they received nothing; the sum paid was applied to the satisfaction of debts of the insured for which they were not liable, and this was done by direction of Holcomb. But we do not understand that, had they received the money they would have been obliged to return the same before they could collect the remainder of the sum owing to them. The amount paid is to be treated as a partial payment. Appellant having been credited with such amount, has not been injured and is in no position to complain.

There is no error in the judgment, and it is affirmed.

*Affirmed.*