ST. PAUL FIRE & MARINE INS. CO. v. PIPKIN. (No. 1439.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 18, 1918.)

1. INSURANCE ⊜=500—PAYMENT OF POLICY—AGREED VALUATION.

The parties to an insurance contract may agree upon the value of the property insured and the specific amount to be paid, for its loss or damage, and, in the absence of fraud, such agreed valuations are conclusive.

2. INSURANCE ⊜=579—ACTIONS ON POLICY—SETTLEMENT—VALIDITY.

Where an insured under a hail policy signed a proof claim submitted by the adjuster specifying the amount of damages, but subsequently claimed larger damages in writing, the proof of claim was not conclusive on insured as a settlement; since it was a mere offer which had not been accepted by the insurer prior to withdrawal.

3. INSURANCE ⊜=668(14)—ACTIONS ON POLICY—SETTLEMENT—QUESTIONS OF FACT.

In an action on a hail insurance policy, where defendant set up a settlement agreement, a peremptory instruction for defendant was properly refused, where there was sufficient evidence to make an issue as to whether insured had a right to set such settlement aside for mistake as to his rights.

4. INSURANCE ⊜=539(1)—NOTICE AND PROOF OF LOSS—STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, requiring stipulations as to notice of claims for damages to be reasonable, invalidating a stipulation for notice of less than 90 days, and providing that notice shall be presumed to be given, unless want thereof be expressly pleaded under oath applies to notice and proofs of loss under a hail insurance policy.

5. INSURANCE ⊜=561 — PROOF OF LOSS—WAIVER.

An insurer under a hail insurance policy, who, after having received an unsworn claim for damages, sent an adjuster who viewed the damage, admitted liability, presented a form of proof, filling in only the percentage of loss, and subsequently tendered a settlement after the time limited for filing a formal proof of loss, thereby waived the formal proof, notwithstanding a provision in the policy that no denial of liability or other act by the company should be deemed to waive such proof.

6. INSURANCE ⊜=282(2)—APPLICATION—MISREPRESENTATIONS—INTEREST OF INSURED.

An application for hail insurance, requesting insurance "on all interest in". a specified number of acres of which applicant was tenant, was not an assertion that applicant owned all the interest in the insured property, but that he desired to insure all his interest, and hence was not a misrepresentation avoiding the policy.

7. INSURANCE ⊜=115(4)—HAIL INSURANCE—INSURABLE INTEREST.

A tenant farming land under agreement with the owner to do the work, the owner to furnish the money, that whatever was made over living expenses was to be paid on a debt owing by the owner for half of the land, and that half of the land when so paid was to belong to the tenant had an insurable interest in the grain growing thereon.

8. INSURANCE ⊜=390—HAIL INSURANCE—ACTIONS ON POLICY—NOTICE OF DISCOVERY OF MISREPRESENTATIONS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 4948, providing that misrepresentations in applications for insurance will constitute no de-

fense, unless the insurer shall show that he gave notice within 90 days after discovering the falsity of the misrepresentations, applies to hail insurance.

9. TRIAL ☞261—INSTRUCTIONS—REFUSAL OF INSTRUCTIONS REQUESTED AS A WHOLE.

Where instructions are requested as a whole, some of which are inconsistent with each other and others obviously improper, the court need not separate the good from the bad and is justified in refusing them all.

10. INSURANCE ☞668(14)—ACTION ON POLICY—QUESTION OF FACT.

In an action on a hail insurance policy, if the insured signed compromise because he misapprehended the provisions of the policy and his rights thereunder, whether such mistake was the result of his own negligence was a question of fact.

11. INSURANCE ☞579 — CONSTRUCTION OF POLICY BY INSURED—NEGLIGENCE OF INSURED.

Where a mistake as to insured's right under a hail insurance policy inducing him to sign a compromise is mutual or induced by fraud, equity will not ordinarily refuse relief on the ground of negligence on plaintiff's part.

12. INSURANCE ☞163(½)—HAIL INSURANCE —CONSTRUCTION OF POLICY — "GROWING GRAIN."

That a hail insurance policy insured "growing" grain did not prevent recovery, where the grain when destroyed by hail was ripe, in view of other provisions in the policy insuring the grain up to a certain date and exempting the insurer from liability after the grain was cut.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Growing Grain.]

Appeal from District Court, Ochiltree County; W. R. Ewing, Judge.

Action by Knox Pipkin against the St. Paul Fire & Marine Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. C. Gray, of Higgins, and Lattimore, Bouldin & Lattimore, of Ft. Worth, for appellant.

R. T. Correll, of Ochiltree, Coffee & Holmes, of Miami, and Hendricks & Mood, of Amarillo, for appellee.

BOYCE, J. Suit was brought by appellee, Knox Pipkin, against appellant insurance company on a policy insuring certain oat and wheat crops against damage from hail. Said policy sued upon insured "Knox Pipkin against loss or damage to the following described growing crops from hail, between the 19th day of May, 1917, m., and the 15th day of September, 1917, at m., * * * on all interest in one hundred acres winter wheat, on section 54, block R, not to exceed $10.00 per acre, on all interest in seventy-six acres oats on section 54, block R, not to ex-

ceed $10.00 per acre, etc." Said policy provided that it was subject to the conditions printed on the following page thereof, one of such conditions being the following:

"That in case of total destruction of the crops herein specified by hail, the amount insured per acre shall be paid by the company and that in case of a partial damage the company will pay the same percentage of the amount insured per acre as the grain destroyed bears to the crop had no damage by hail occurred—thus if one half of the crop insured is destroyed the company will pay one half of the amount of insurance per acre, etc."

Plaintiff alleged that during the term of the policy the oat crop was totally destroyed by hail and the wheat crop suffered a damage of 90 per cent. He sued for and recovered $10 per acre, or $760, on account of total destruction of the oats, and $9 per acre or $900 damages to the wheat. The provisions in the policy referred to were treated as fixing the value of the property, and no allegations or proof were made as to the actual value of the grain.

[1] Appellant's first assignment is based on the proposition that the policy was only a contract of indemnity, that the plaintiff could therefore only recover the actual loss sustained, and that he should be required to show the actual value of the grain destroyed. The parties to an insurance contract may agree upon the value of the property insured and the specific amount to be paid for its loss or damage from the cause insured against, and in the absence of fraud such agreed valuations are conclusive. R. C. L. vol. 14, p. 1305, § 479; Cyc. vol. 19, p. 836; Borden v. Hingham Fire Ins. Co., 18 Pick. (Mass.) 523, 29 Am. Dec. 614; Buffalo Elevating Co. v. Prussian National Insurance Co., 64 App. Div. 182, 71 N. Y. Supp. 922, quoting from Wood on Insurance, § 43. The policy sued on, as we construe it, attempts to fix by agreement the value of the grain crop per acre, and provides for payment for loss and damage on the basis of such value. There does not appear to us to be any repugnancy between the terms of the two clauses of the contract which we have quoted. Construed together, they seem to be entirely consistent and clearly express the meaning indicated above.

Under the second assignment appellant complains that the court refused to give a peremptory instruction in its favor on the ground that a binding agreement for compromise of plaintiff's claim had been made. The appellant pleaded that after the damage occurred on, to wit, "July 19, 1917, plaintiff contracted in writing with defendant for a compromise and settlement of plaintiff's alleged claim against defendant, which is the subject of this suit, whereby plaintiff agreed to accept of defendant $704.00 in full and

complete settlement of this alleged claim against defendant and pursuant to said contract defendant tendered to plaintiff said sum, and said contract and tender is still in full force and effect." To this answer the appellee replied that the compromise agreement was entered into on the mistaken belief that he was only entitled, under the terms of the policy, to recover the actual value of the crop; that this belief was induced by false representations to that effect, relied upon by him, made by the adjuster of the company at a time when the policy was not accessible for inspection.

The evidence shows that some time after the damage from hail the adjuster of the appellant came to see appellee in reference to adjusting the damage. Appellee testifies that the adjuster agreed with him that the oats were a total loss, but that said adjuster represented that the policy provided only for payment of the actual loss, and that he (the adjuster) estimated such loss, based upon the actual value of the wheat and oats destroyed, to be $4 per acre, and that this was all that could be paid under the terms of the policy. It also appears from the evidence that this conversation occurred out in the field; that the appellee did not have the policy at the time and had not read it carefully and believed the statements made to him by the adjuster. The adjuster claimed to be in a hurry, and, after the conversation just detailed, appellee signed an instrument, which appears to be in the nature of a claim or proof of loss, and in which the total amount of the claim was stated to be $704, based on 40 per cent. damage on 100 acres of wheat and 76 acres of oats. This instrument was not read over by appellee, and only the statement of the per cent. of damage was filled in; the agent stating that he would fill in the other blanks later. As stated above, the instrument appears to be simply a claim which states the issuance of the policy, description of the grain insured, the occurrence of the hailstorm, and amount of damage and claim on account thereof. Following the signature of the plaintiff, it contained this statement, signed by the adjuster:

"After a careful examination of the property damaged by hail, so far as necessary to determine the true and actual loss, I hereby certify that the above claim is just and true, according to the best of my knowledge and judgment and no more than the insured is entitled to receive."

This claim was dated July 19th, and thereafter, on August 15th, the appellant tendered to the appellee draft for $704, which appellee refused to accept. Appellee testified that within a few days after he signed this claim he read his policy, concluded that he was entitled to settlement on the basis of the valuation of $10 per acre for the grain and that he would not accept $704, and so notified the company by letter in about two weeks after the conversation with the adjuster.

We think, under these facts, that there are at least two reasons why a peremptory instruction in favor of the appellant, based on the ground that there was a binding written agreement for settlement made as pleaded, would not have been proper:

[2] First, because the evidence does not conclusively show that any such agreement was made; the alleged written agreement referred to was not in terms any agreement at all. At most, it could only be impliedly a proposal or offer to accept the sum stated in settlement of the amount for which the claim was made. It is elemental that, in order to constitute a binding agreement or contract, there must have been an acceptance by the other party, the insurance company here, so that it too became bound. No acceptance of this offer, if it be one, is conclusively shown prior to the tender to the appellee of the draft for $704. The evidence was sufficient to have justified the conclusion that the offer of appellee was withdrawn by a letter to the company, some time prior to the tender of the draft. If the offer was withdrawn prior to its acceptance, then, of course there was no agreement for settlement.

[3] Second, because the evidence is sufficient to make an issue as to whether the appellee had the right to have such settlement agreement, if one was made, set aside on account of the mistake as to his rights under which it was made. Insurance Co. v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695; Moreland v. Atchison, 19 Tex. 308; Ramey v. Allison, 64 Tex. 703; Altgelt v. Gerbic, 149 S. W. 236; Smith v. Jones, 192 S. W. 798; West v. West, 9 Tex. Civ. App. 475, 29 S. W. 244; Lott v. Kaiser, 61 Tex. 665; Hudson v. Glens Falls Ins. Co., 218 N. Y. 133, 112 N. E. 728, L. R. A. 1917A, 482; Pomeroy, Equity Jurisprudence, §§ 849, 850. This mistake, according to appellee's testimony, was not one purely of law, but both law and fact; that is, as to the terms of the contract itself as well as the construction thereof. This mistake was induced by the representations of the appellant's agent, who had, or might be presumed to have, superior knowledge as to such matters. Failure of the appellee to consult the policy to refute the statements so made might, under the circumstances, be justified. Under the rules as announced by the authorities referred to particularly as stated by Pomeroy, whose statement is often quoted by the authorities, including some of those cited by us, we think the facts sufficient to make an issue for submission to the jury.

Appellant, by the third assignment, asserts that it was entitled to a peremptory instruction because the evidence shows that no proof of loss was made as required by the insurance policy. This provision was as follows:

"The assured shall, within sixty days after the loss, unless such time is extended by the secretary of this company, make proof of loss under oath, stating the date and number of his policy, a description of the land upon which the grain was damaged by hail; date of loss or damage, the percentage of damage done to grain on each piece of land; a failure by the assured to give notice or make proof of the loss within the time herein specified shall cause a forfeiture of any claim under this policy. No denial of liability or other act on the part of the company shall be deemed to waive or dispense with the furnishing of such proof."

[4] No such formal proof as here provided appears to have been made, the only proof made being contained in the unsworn statement made in the notice given within 48 hours after the hail and statement made in the claim and letter in reference thereto already referred to. It has been held in a number of cases that article 5714 is applicable to notice and proofs of the character provided for in this policy. Ætna Life Insurance Co. v. Griffin, 58 Tex. Civ. App. 198, 123 S. W. 432; Maryland Casualty Co. v. Hudgins, 72 S. W. 1047; Texas State Insurance Co. v. Herndon, 184 S. W. 283; Royal Casualty Co. v. Nelson, 153 S. W. 674; Insurance Co. v. Hare, 180 S. W. 282; Insurance Co. v. Mountcastle, 200 S. W. 862; Western Indemnity Co. v. F. & A. M. 198 S. W. 1092; Floyd v. Illinois Bankers' Association, 192 S. W. 607; North American Accident Insurance Co. v. Miller, 193 S. W. 757. The two cases last cited were decided by this court. Whatever doubt may have been entertained as to this question as an original proposition, we do not consider it now an open question in this court and need not discuss it further. Under the provisions of this article, this clause of the contract would be void.

We also think that there was an issue of fact as to whether appellant had waived the filing of the formal proof, which would have made it improper to instruct peremptorily on this ground. The appellee pleaded that the filing of these proofs was waived by the defendant. The acts of waiver, viewed most favorably to appellee, as we must view them in passing on this assignment, are: That the company received written notice, signed by appellee, which contained every statement of fact necessary to be contained in the proof required by the policy, except that the date of the policy was omitted, though its number was given, and the statement was not sworn to. Without waiting for more formal proof, the company sent its adjuster to view the damaged crops, who examined them fully, admitted liability, and himself presented to the appellee a form of proof, filling in only the per cent. of loss under the circumstances already detailed, evidently waiving any requirement that it be sworn to. Thereafter, within the 60 days, the company was notified in writing that the appellee claimed the amount stated in the original notice. No objection was made to the form of proof, but the company, after receipt of this letter, tendered the $704 in settlement of the policy, and, after the 60 days, tenders and is still tendering in this court such amount.

[5] These acts, unless their effect is to be conclusively controlled by that provision of the policy which says that "no denial of liability or other act on the part of the company, shall be deemed to waive or dispense with the furnishing of such proof," are unquestionably sufficient to constitute a waiver. Insurance Co. v. Meyer, 9 Tex. Civ. App. 7, 29 S. W. 95; Michie's Digest, vol. 10, pp. 677–683; Equitable Life Insurance Co. v. Ellis, 105 Tex. 526, 147 S. W. 1156, 152 S. W. 627, 628; Georgia Home Insurance Co. v. Morarity, 37 S. W. 632; Providence Insurance Co. v. Wolf, 168 Ind. 690, 80 N. E. 29, 120 Am. St. Rep. 395; R. C. L. vol. 14, p. 1349; 2 May on Insurance, 469 (c). As to the effect of such a provision last above quoted, May, in his work on Insurance, says:

"A clause to the effect that no act of the company, except an express written declaration, shall waive the requirements in regard to proofs, will not prevent the company from estopping itself by act in pais." Section 473a.

This statement is only the application to the insurance contract of a general principle recognized in the law of contracts that parties may not, by contract, limit their freedom of contract or right, by conduct or agreement sufficient for that purpose, to change or modify the rights and liabilities growing out of the contract containing the attempted limitation. C. J. vol. 13, p. 594, § 611, and authorities cited; Bartlett v. Stanchfield, 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625. This principle is well stated by Justice Holmes of the Massachusetts Supreme Court, in the case last above cited, as follows:

"Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of plaintiff and defendant, no doubt. But it cannot be assumed, as a matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words."

Under the circumstances we have detailed, we think the question of waiver, notwithstanding the provision referred to, was still one of fact for submission to the jury.

[6] The fourth assignment is multifarious, but we will consider it as suggesting fundamental error in so far as it complains of the refusal to instruct a verdict for the defendant on the alleged ground that any right of recovery was defeated by an alleged misrep-

resentation in the application for insurance. The proposition under this assignment is as follows:

"A statement in an application for insurance, which is a part of the contract, that one owned all interest in the insured property when in fact he does not own all interest, is a material misrepresentation and the policy void."

Reference to the application fails to sustain the statement that the representation referred to was that appellee owned the entire interest in the grain. This statement, in so far as it is material here, is as follows:

"I, Knox Pipkin, * * * hereby make application to the St. Paul Fire & Marine Insurance Company, for insurance upon growing grain, against damage by hail only, for the season of 1917, * * * on the following described property: State exact interest in crops, all, one-third, or one-half.

"On all interest in one hundred acres of wheat on Sec. 54, Block R. * * * On all interest in seventy-six acres of oats, etc. * * * I hereby declare that I am the tenant of the above described land containing 640 acres, with growing crops named thereon."

[7, 8] We construe this statement to be, not an assertion that the applicant owns all the interest in the insured property, but that he is desirous of insuring all interest. Appellee testified that he was farming the land under an agreement with his father-in-law, the owner, to this effect: That appellee was to do the work; the father-in-law was to furnish the money that was needed to run the farm, and that whatever appellee made out of the farm over living expense was to be paid "to Walsted on what King (the father-in-law) owed him for half of the land." When this debt was paid out in this way, appellee was to have half the land. Appellee is thus shown to have an insurable interest in the grain if it be conceded that he would not be held to absolutely own the entire interest, which we do not decide. Merchants' Insurance Co. v. Scott, 1 Posey, Unrep. Cas. 534, 538; Merchants' Insurance Co. v. Dwyer, 1 Posey, Unrep. Cas. 441–445; Continental Fire Insurance Co. v. Wingfield, 32 Tex. Civ. App. 194, 73 S. W. 847; R. C. L., vol. 14, p. 910. We are also of the opinion that if it be conceded that the statement is a representation as to the ownership, and that such misrepresentation is material, appellant has not shown itself to be in position to urge the defense. Vernon's Sayles' R. C. S. art. 4948. However, the question of materiality would be a question of fact. R. C. S. 4947. We see no reason to doubt that these provisions apply to this character of insurance. They are now a part of a chapter devoted to the subject of insurance and entitled "General Provisions." They were originally adopted as part of chapter 15, R. C. S. 1895, and evidently intended to be general in their application to the subject of in-

surance. Acts 1903, p. 94. We therefore overrule the fourth assignment of error, and also the seventh assignment, for the same reasons.

[9] The instructions and issues requested, made the basis of the fifth, eighth, ninth, and tenth assignments, were included with several other instructions in one instrument, styled "Defendant's Request for Special Issues," and thus appear to have been requested and refused as a whole. Some of these instructions are inconsistent with each other, and some of them obviously improper. The court was not required to separate the good from the bad, and was justified in refusing the instructions so requested as a whole. This reason alone, we think, would be sufficient for overruling said assignments, except possibly the tenth. It may be that, where an issue is made by the pleading and evidence and the court has failed entirely to charge on it, such defective request would be sufficient to call the court's attention to the matter and require him to submit a proper charge. We have, however, considered these assignments and are of the opinion that they should be overruled for the following additional reasons:

[10, 11] The request referred to in the fifth assignment was properly refused because, under the circumstances, the question as to whether appellee's mistake as to the provisions of the policy and his rights thereunder was the result of his own negligence would be, in any event, a question of fact, and the charge peremptorily informs the jury that, if appellant's failure to read and know the provisions of his policy was the cause of his signing the compromise, then the jury should find that said contract was not entered into under a mistake of mutual fact. Besides, where the mistake is mutual or induced in one by the fraud of the other, equity will not ordinarily refuse relief on the ground of negligence on the part of the plaintiff. San Antonio National Bank v. McLane, 96 Tex. 48, 70 S. W. 202; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Littlefield v. Clayton Bros., 194 S. W. 197, section 4 of opinion.

There was no error in the refusal to submit the issue referred to in the ninth assignment. Mistake as to the contents of this instrument, the claim signed by appellee, was not a material issue in the case. Relief was granted on the theory that this instrument was not binding, not because of a mistake as to its contents, but because it was signed under a mistake as to appellee's rights.

The charge referred to in the ninth assignment was properly refused. If the insurance company's agent represented that the policy provided only for payment upon basis of the actual value of the grain, such representation was either innocently and mistakenly made or was fraudulent. The rights of the plaintiff would be the same in either

event, though the presumption would be that the false representations were innocently made. Besides, the issue submitted was simple and could be sufficiently understood without this instruction if it was really proper under the circumstances.

[12] The tenth assignment complains of the refusal of the court to submit an issue as to whether plaintiff's crop was "growing" grain at the time of the hail. There was evidence that would warrant the conclusion that the wheat was matured and ready for harvesting. Plaintiff testified that he intended to begin cutting it on the next day after the hail. It seems to be appellant's contention that the policy covered only loss or damage while the crop was in the actual state of growth through the assimilative processes of plant life. We do not think it was the intention of the policy to limit its duration to any such uncertain period of time. While the policy described the property insured as growing crops, this provision being quoted in our preliminary statement, that description only applied necessarily to the condition of the property at the time the policy was written. The following additional provisions of the policy indicate the real intention of the parties as to the time of its termination: The insurance was between the 19th day of May, 1917, at noon, and the 15th day of September, 1917, at noon, "and in no event shall the company be liable after the grain is cut * * * in case any of the crops insured shall be so injured by drouth, frost or being overripe, or from any other cause, so that such portion will not result in a profit over and above the actual cost of cutting, harvesting and marketing, then the company shall not be liable for any damage which may occur from hail." The construction urged by appellant would defeat in a measure the purpose of the insurance, for there would be a period of time, just prior to harvesting, when protection from hail might be most necessary, when the rights of the parties under the policy would be very uncertain. We think it was evidently the intention to insure the grain until it was cut, or had reached such a stage of overripeness as that it was not worth the expense of harvesting.

The proper predicate for admission of the oral testimony as to the contents of the written instrument, which was excluded, and is referred to in the sixth assignment, was not laid. For the reasons given in our discussion of the fourth assignment, this testimony would also have been immaterial.

The eleventh assignment is unintelligible. We find no such paragraph in the motion for new trial, and special issue No. 3, referred to in the assignment, does not have to do with the issue of waiver at all, as the assignment seems to assume. Our holding on the question of waiver already announced would result, in any event, in overruling this assignment.

What we have said in the discussion of other assignments is sufficient, also, to dispose of the twelfth and thirteenth assignments, which we overrule.

We have found no reversible error assigned, and the judgment is affirmed.