## CASUALTY RECIPROCAL EXCHANGE v. BRYAN.

### No. 1616.

Court of Civil Appeals of Texas. Eastland.

Jan. 15, 1937.

Rehearing Denied Feb. 26, 1937.

E. C. Gaines, of Austin, for appellant.

Smith & Smith, of Anson, for appellee.

LESLIE, Chief Justice.

This is a suit by H. N. Bryan, appellee, to set aside a written compromise agreement in a compensation case in which the Casualty Reciprocal Exchange was defendant below and is the appellant here.

After the written release was executed and delivered and the consideration therefor received by the appellee, H. N. Bryan, he filed, on May 28, 1935, in the district court of Jones county, his original petition for the dual purpose of setting aside the compromise agreement and a recovery of compensation in the same suit. This suit was filed after the appellee had applied to the Industrial Accident Board for an order setting aside the compromise agreement, and this having been refused by the board, notice of appeal was duly given and the original suit was filed as an appeal from said order of the board.

However, a plea to the jurisdiction of the court to hear both causes of action in one suit was filed by the appellant and sustained by the trial court. On the 25th day of September, 1935, the appellee filed his first amended original petition in which he abandoned any suit for compensation and sought only a decree setting aside the compromise settlement agreement. To rid himself of the release the appellee appears to have proceeded thereafter upon the theory of law clearly and succinctly stated in the recent opinion in Commercial Casualty Ins. Co. v. Hilton (Tex.Com.App.) 87 S.W.(2d) 1081.

Briefly, and in substance, the appellee's allegations in his first-amended original petition are:

That while employed by the Alexander Gin Company he was injured, in the course of his employment, on February 2, 1933; that the employer carried Workmen's Compensation Insurance with the appellant; that on receipt of the injury the employer and appellant placed him in the care of a physician who treated him for his injuries; that his condition appeared to improve and after a time he consulted said physician on the advisability of his returning to work for the employer; that about the same time he advised with said doctor as to the propriety of settling his claim for damages with the appellant; that the doctor stated in substance that appellee's neck or injuries

were sound and well and advised him to settle his claim. That no other doctor treated him; that he had long known said doctor and relied upon his representations and statements as to the extent of his recovery. That relying upon the doctor's representations, he settled his claim with the appellant for "a sum" ($350) or "an amount much less than the amount" to which he would have been entitled, or which he would have recovered if the fraudulent statements had not been made to him by said doctor, and he had not been induced thereby to execute and deliver the compromise settlement agreement; that his injuries were not well or healed when said representations were made and that the doctor and appellant knew, or could have known, his true physical condition at the time of such statements and settlement; that these representations were material, false, and relied upon by him and by reason thereof he was overreached by the appellant "through its agents, employees and physicians and especially its doctor whom it had employed to treat plaintiff." The appellee further alleges that his injuries in fact resulted in his present total and permanent incapacity to labor, entitling him to weekly compensation at $20 per week for 401 weeks, etc.

The appellant, defendant below, answered by general demurrer, special exceptions and general denial. All exceptions were overruled, as shown by the judgment. The trial was before the court and jury, and upon the jury's answer to special issues, judgment was rendered in favor of the appellee setting aside the compromise agreement on the ground of fraud. The appellant attacks the judgment under three propositions of law.

By the first proposition it is contended that the plaintiff's petition is insufficient to state a cause of action; that "it is fundamental and necessary that the plaintiff show a right in himself to the relief sought." We have carefully read the petition in the light of the contention made, and have reached the conclusion that the record supports the contention, and, we, therefore, sustain the proposition.

The appellee, in his petition, alleges that "the sum" or "amount" paid him in consideration of his signing and delivering the release agreement was much less than the amount he should have recovered for total and permanent incapacity, etc., but no-where in his pleadings does he allege that he has returned the amount so received by him, nor does he offer to return same, or otherwise proffer to do equity as a predicate for the cancellation of the compromise settlement agreement executed and delivered by him.

■ In an equitable proceeding of this kind, it is well settled that any person demanding the rescission or cancellation of a contract to which he is a party, must restore or offer to restore to the other party whatever he may have received under the contract in the way of money, property or other consideration of benefit. The rule of law is stated thus in 9 C.J. § 169, p. 1241: "In nearly all jurisdictions a bill is demurrable in which complainant does not offer to return any consideration which it shows he has received, or otherwise place defendant in statu quo, or sufficiently excuse himself from that duty."

The state of Texas is one of such jurisdictions where the rule obtains. W. H. Stewart et al. v. H. & T. C. Ry. Co., 62 Tex. 246; DePerez v. DeEverett, 73 Tex. 431, 11 S.W. 388; Thomas v. Beaton, 25 Tex.Supp. 318; Donoho v. Hunter (Tex. Civ.App.) 242 S.W. 282, 288; Id. (Tex. Com.App.) 276 S.W. 174; McDonald v. Simons (Tex.Com.App.) 280 S.W. 571; Barton v. Farmers' State Bank (Tex.Com. App.) 276 S.W. 177; 7 Tex.Jur. p. 985, § 62.

■ It is the primary object in a suit for rescission or cancellation of a contract obtained by fraud to undo the original transaction and restore the former status of the parties. Hence, the complainant in a bill or petition must offer to restore to the defendant whatever property or valuable consideration he may have received under it, and the pleading without such averments is fatally bad. This is but the enforcement of the ancient rule of equity that he who seeks equity must do equity. Black on Rescission and Cancellation, vol. 2, p. 1414, § 616, et seq.

■ The second proposition presents the contention that the misrepresentations of the doctor would not be sufficient predicate or basis for a charge of fraud if they were not "intentionally" made. The appellant's point is that "it does not appear from either the pleadings or the evidence that the physician treating * * * employee made any intentional misrepresenta-

tions as to his condition. * * *" That the doctor "was sincere in his statement" to the injured employee. We overrule this proposition. The law in such cases is stated in 36 Tex.Jur. p. 809, § 13, in the following language:

"An innocent misrepresentation of a material fact, made by the releasee or his agent for the purpose of inducing a settlement, will justify the avoidance of a release induced thereby. The fact that the statement made was not intentionally false does not affect the right of the releasor to have the contract set aside if he was misled by the statement. 'In such a case, innocent misrepresentations may as well be the basis of relief as where such statements are intentionally false.'

"A release of a claim for personal injuries may be avoided for innocent misrepresentations by the releasee's physician as to the nature or extent of the injuries, provided that such statements were in fact false and not merely expressions of opinion, and were made for the purpose of inducing a settlement. The fact that such a representation was made in good faith, or that the claim agent, who knew of the misrepresentation, acted in good faith, is immaterial in so far as the right of the releasor to avoid the settlement is concerned."

See Cowan v. El Paso Elec. Ry. Co. (Tex.Com.App.) 271 S.W. 79, and numerous authorities cited by the text.

■ Particularly is the above rule of law applicable to the instant case in that the jury's verdict herein finds that the doctor made the alleged fraudulent statements; that at the time he knew the plaintiff was contemplating a settlement; that the advice was false, believed, and acted upon by the appellee, and that the "representative of the defendant" who made the compromise settlement knew at the time of making the same that the doctor had made such statements and that the "appellee believed and relied on the same" in making the settlement. Regardless of what this court might think about these fact issues, the jury has taken the testimony and made definite findings which this court is without authority to disregard.

■ By the third proposition the contention is made that the court erred in not giving the appellant's specially requested charge No. 1 limiting certain testimony admitted on the trial. The testimony related to the appellee's physical condition (claimed to be due to the accidental injury) "at time of the trial" and the point is made that it should have been limited "to its effect as tending to show what may have been the true facts and the belief of the parties at the time the compromise was made."

We think the testimony was admissible on the issues generally. It had a bearing upon the question of fraud in that it tended to reflect either the truthfulness or the falsity of the doctor's statement that the plaintiff was well and had made a complete recovery except for needed exercise of the injured parts. The doctor's statement or representations were made concerning matters not equally open to both parties and were made in view of a pending settlement, as found by the jury. The testimony was admissible to show the injury suffered by appellee in consequence of the fraud. The trial court did not err in refusing the special charge.

Since we have sustained the first proposition challenging the sufficiency of the plaintiff's petition, and since the error dealt with is also fundamental in its nature, it becomes necessary to reverse the judgment of the trial court and remand the cause. It is so ordered.

## On Rehearing.

■ In his motion for rehearing, the appellee insists that we erred in holding that it was a prerequisite to the cancellation of the compromise settlement agreement that he tender the consideration received, place the defendant in statu quo, or sufficiently excuse himself from that duty by proper allegations. After a careful review of the authorities we still entertain the views expressed in our original opinion on this point. In any consideration of the above contention it must be borne in mind that the appellee affirmatively alleges that as a consideration for signing the settlement agreement he received a valuable consideration. Nowhere does he plead that he has tendered a return of this consideration. He does not plead that he is willing to restore the status quo of the parties. He does not allege any fact, or circumstances excusing him from the duty of offering to do so. He does not allege any reason or fact that would entitle him to retain the considera-

tion, even though a cancellation be decreed. He does not allege or propose in his pleadings that the consideration which he has received and enjoyed may be adjudged by the court as an offset to any recovery which he may obtain against the appellant, and there would indeed be no good reason for such allegation of offset in this case, since the sole·purpose of the suit is to set aside a compromise settlement agreement of an uncertain, indefinite, and unliquidated claim. There are no allegations in the plaintiff's pleadings bringing the case within the rule of law aptly expressed in 2 Black on Rescission, §621, as follows: "One seeking the rescission of a contract or other transaction is not required to make a tender or offer of restoration of that which he would be entitled in any event to retain, that is, either by virtue of the original liability of the other party if the contract should be rescinded, or under the contract itself if rescission should be refused."

5 Pomeroy, § 2110, thus states the rule: "Neither is a party obliged to return that which he will be entitled to retain, even though a cancellation be decreed."

In 9 C.J. § 97, p. 1210, the rule is stated in different words: "One who seeks to rescind an instrument is not bound to restore that which he would be entitled in any event to retain."

Neither appellee's pleadings nor his testimony bring his case · within the rule stated. 7 Tex.Jur. p. 961, §§ 47, 48, and 49 where many instances are given in which restoration is dispensed with.

The great weight of authority sustains the rule as quoted in our opinion from 9 C.J. § 169, p. 1241. Among the several Texas cases cited as sustaining the rule that by our Supreme Court in the case of W. H. Stewart et al. v. H. & T. C. Ry. Co., 62 Tex. 246, 249, is especially interesting. It involved the setting aside upon allegations of fraud of a compromise settlement agreement of claim for damages for personal injuries. It alleged fraud and deceit consisting in inducing the injured party to become intoxicated, etc. In disposing of this phase of the case and the necessity of returning or offering to return the consideration paid for the settlement, the Supreme Court used this language: "As presented by the record it is not necessary to determine whether the condition of intoxication asserted by Stewart, together with the alleged deceits practiced upon him by Shirley, were such as would authorize the court in granting the relief sought, if properly presented, because he alleges that he received the $1,600 as an adjustment, and had retained and used the money, and that he cannot restore the appellee to its former · status. Having received the money, if he desired to repudiate the adjustment when he became sober, it was incumbent upon him to promptly inform appellee of that fact, and to·tender back the money received. But having failed to do this he comes into court with soiled hands, and no relief can be obtained. 'As he has bound himself, so must he be bound.'"

The Stewart Case is cited with approval by the Court of Civil Appeals in·The Oriental v. Barclay, 16 Tex.Civ.App. 193, 41 S.W. 117, 126, 127, where it is said: "It is also true that courts with equity powers will protect the equitable rights of the defendant arising upon his· answer, regardless of the nature of the relief sought by the plaintiff, and will make all necessary orders to that end, and may require a tender for that purpose. Pom.Eq.Jur. § 388. In a suit for rescission the rule is that the admitted consideration received must be tendered back, to the end that all parties may be protected. Where such tender appears not to be necessary for the protection of all parties, the reason for its requirement ceases, and it will not be enforced by the courts."

In the last case the opinion states, however, that there was a denial that "any consideration for the release had been received." That being true, it would be useless to contend for tender or that plaintiff should allege excuse for not making such.

Under the subject of cancellation of instruments, 7 Tex.Jur. 985, § 62, it is stated: "In accordance with the rules of substantive law hereinbefore considered, the complainant shall allege that the consideration has been restored, or incorporate an offer to restore it and do equity. Tender before suit should be alleged where that is a necessary condition precedent, or an excuse for failure to make such a tender should appear. Where the averments are too indefinite to enable the court to ascertain that the consideration has been restored, or offered to be restored, they are insufficient to support a suit for cancellation."

The same text, p. 959, § 46, again interprets the rule in this language: "He must return or offer to return to the defendant whatever he may have received, or its val-

ue within a reasonable time after the discovery of his rights; he cannot be permitted to repudiate the instrument, and, at the same time, retain the benefits received thereunder. Where the complainant has not restored or offered to restore the consideration, he does not re-acquire any equitable title or put himself in a position to ask a rescission. This results from the equitable maxim that 'He who seeks equity must do equity.' "

The rule deemed binding in our original opinion and applicable to the instant case was applied by this court in Walling v. Rose, 2 S.W.(2d) 352, 353, 354; Darnell v. Waldrop, 57 S.W.(2d) 392; Houston Land & Trust Co. v. Sheldon, 69 S.W.(2d) 796; Poe v. Texas & P. Ry. Co., 95 S.W.(2d) 505 (writ of error granted on other grounds). These cases are of different types, but the maxim above stated, and restated in the Walling Case, represents a principle or rule of equity of general application. Upon the question of tender in the Walling Case, the court said: "In support of their right to refuse to tender back, appellees rely upon the case of Oar v. Davis, 105 Tex. 479, 151 S.W. 794, and the opinion of the Court of Civil Appeals in the same case reported in 135 S.W. 710. There is a very marked distinction between the facts in that case and the facts in this case. One sentence taken from the opinion of the Supreme Court discloses this distinction: 'No consideration was paid by said Oar for said land, but he paid only the amount agreed upon for the three tracts they agreed to sell him, which amount was adequate compensation for plaintiffs' interest in those tracts, but grossly inadequate as a consideration for all the land embraced in the deeds.' " (Italics ours.)

This portion of the opinion in the Walling Case analyzes the case of Oar v. Davis, cited and relied on by appellee herein, and we think the analysis shows that it does not support appellee's contention that tender, etc., is not necessary.

In his motion for rehearing the appellee cites Smith v. A. T. & S. F. Ry. Co. (Tex. Com.App.) 232 S.W. 290, and largely relies upon it to sustain his contention that we erred in the respect under consideration. His motion calls particular attention to the authorities cited in that opinion. We now briefly discuss that authority and those cited by it.

The Smith Case involved the setting aside of a settlement and release of a claim for damages arising out of personal injuries. Dunaway was the injured party who signed a settlement agreement for a valuable consideration and then sought to set it aside upon the ground of fraud. The opinion (at page 293 of 232 S.W.) states: "Dunaway alleged that he had used the money received from the railway company in consideration of the execution of the release of his claim for damages, and that he had no money with which to make a tender, but asked to have the amount so received credited upon any judgment he might recover."

Following this statement of the record with reference to what was in fact *alleged*, the court said: "It was not necessary to Dunaway's suit for rescission of the settlement that he tender the amount paid him in the settlement." Citing many cases.

Regardless of what might be said or thought of the sufficiency of the excuses for not making tender in said case, it is certain that Dunaway did allege and excuse (the sufficiency of which we are not called to pass upon) for not tendering the money as a prerequisite to his right to cancel his compromise settlement. Plaintiff's pleadings are silent as to such showing, whereas in the Smith Case, Dunaway in fact alleged a character of excuse apparently held sufficient to meet the requirements of the situation.

We now call particular attention to each case cited on the point in the Smith Case, and relied on in appellee's motion for rehearing:

(1) The Northwestern Life Ass'n v. Findley, 29 Tex.Civ.App. 494, 68 S.W. 695, 698, was a case in which Mrs. Findley instituted suit on a $2,000 insurance policy, the claim for which it appears had been settled by a compromise agreement releasing the same for a consideration of $500. That opinion in specific language states:

"Appellees personally never received any part of the money. No part of it has been returned to appellant. * * *

"It is urged that, before appellees could have the settlement set aside they were bound to tender back the money received. In fact, they received nothing. The sum paid was applied to the satisfaction of debts of the insured, for which they were not liable."

This language states the precise nature of that case, as reflected in pleadings and in testimony. Certainly no tender would be required in a case of that kind and its facts distinguish it from this one.

(2) The opinion in International & G. N. Ry. Co. v. Shuford, 36 Tex.Civ.App. 251, 81 S.W. 1189, has no application because there was no question of failure to tender, etc., involved in the case. The opinion itself says (at page 1197 of 81 S.W.): "The plaintiff, in her ₊petition, did tender the $250 received, and the verdict and judgment of the trial court fully protected the appellant in that sum."

· No such showing is made in the instant one.

(3) In Galveston, H. & S. A. Ry. Co. v. Cade (Tex.Civ.App.) 93 S.W. 124, 125, the plaintiff sued for damages for personal injuries. It appears that he had compromised and released his claim for $700. The following language from the opinion clearly reflects the nature of that case: "The defendant pleaded this release, and its execution and the receipt of the money consideration was shown, and the first proposition is that because plaintiff did not tender or offer to return the $700 before the suit, and did not, as shown by the pleadings' and the undisputed evidence, make a continuing tender and deposit in court of said sum and interest, but refused to do so, he was as a matter of law not entitled to recover, and the peremptory instruction should therefore have been given. The original petition did not refer to the release and it was first pleaded by defendant. *In the first supplemental petition plaintiff pleaded that the release was obtained from him by misrepresentation and fraud of the defendant, etc., and tendered the $700, and interest.*" (Italics ours.)

In the holding, the court, coming back to the same point, said: "As to plaintiff not having paid or offered to pay the $700, and interest, before the suit, or not having deposited it with the court, we think the point not well taken. All that is necessary we think in an action of the kind is to express a tender or a willingness in the pleadings to allow the same against any judgment that may be rendered."

Obviously, that case is no authority for the proposition that one seeking such equitable relief need not make a tender of consideration received, or allege a tender of same, or an excuse for not performing such duty. ₊

(4) The case of Texas & P. Ry. Co. v. Jowers (Tex.Civ.App.) 110 S.W. 946, 948 (writ ref.) contains some language that seems to support the contention of the appellee, but the language must be considered dicta in the light of the facts there under consideration and the point decided. The true nature of the pleadings and facts in that case is reflected by this excerpt from the opinion: "The third exception, based upon the failure to tender the amount paid in consideration of the release, or to make some offer of refunding it, was sustained by the court. The appellee thereupon filed a trial amendment to the effect that he did not ascertain the full extent of his injuries alleged in his petition, or that he had been imposed upon by the fraud of the appellants in procuring the said release, until after he had spent the $220 paid him at the time the release was procured, and that he was not financially able to tender the sum into court, but offered to allow the same as a credit upon whatever judgment he might be entitled to in the cause."

As above stated, we are not here concerned with the nature or sufficiency of the excuse or explanations alleged and allowed in such cases where the general rule would, under ordinary circumstances, be applied. Certain it is, some of the excuses or purported reasons given for not complying with the general rule of equity appear to be so light and frivolous as to amount to a repudiation of such equitable maxims as: "He who seeks equity must do equity," or "He who comes into equity must come with clean hands"; but in the instant case the appellee seeking to set aside a written agreement settling a doubtful, uncertain, and unliquidated claim for a valuable consideration makes no allegation whatever of tender, readiness to tender, or excuse for not tendering into court the consideration received as a prerequisite to the cancellation of the written instrument.

(5) The last authority cited in the Smith Case is North American Acc. Ins. Co. v. Miller (Tex.Civ.App.) 193 S.W. 750, 758. The following excerpt from it discloses that it affords no support for appellee's contention: "It is also urged by appellant that the settlement in this case cannot be set aside because upon discovering the fraud appellee did not tender back the $1,000 received. This the evidence indicates appellee was not able to do. She, in her supplemental petition admitted that the appellant was entitled to a credit of $1,000

902

paid, and prayed that it be allowed as such against any judgment she might obtain. To require her to pay back the $1,000 before she could have set aside the fraudulent settlement would have worked a great hardship on her."

As authority for this statement of the law the court cited the opinions above discussed and cited in the Smith Case. The first one here cited is the Findley Case, supra.

We state again that we are not concerned with the soundness of the rule that permits lack of ability, expenditure of funds, investment of the same in encumbered equities, etc., to be, when alleged and proved, sufficient excuses for not tendering back the consideration received under such circumstances, but the rule, whatever it is, and however easy to comply with, even by mere matter of allegation is not complied with in any respect in the instant case.

The appellee also cites Anderson v. Anderson (Tex.Civ.App.) 40 S.W.(2d) 909, 910. It cites with approval Stewart v. Railway Co., supra, which announces the rule sought to be enforced by our original opinion. The following excerpt from the Anderson Case shows it to be in line with the principle we have announced. "There is, however, an exception to the aforementioned general rule as to the necessity of restoration on the part of the complainant in order to obtain relief. The exception is founded in the principle that the complainant or one seeking the rescission of a transaction on the ground of fraud is not required to make restoration of that which in any event he would be entitled to retain, either by virtue of the contract sought to be set aside or of the original liability."

As noted in the outset, there are no allegations which bring the instant case within the terms of this rule which we readily acknowledge.

The Indemnity Ins. Co. of North America v. Sterling (Tex.Civ.App.) 51 S.W. (2d) 788, 790, is one where the appellee sought to set aside a compromise settlement. The opinion stated: "Though appellee did not tender into court the money paid him by appellant in the compromise settlement, or any part thereof, he pleaded that it had been expended in the support of his family and in an effort to be cured of his injuries, and further that he was 'unable to work and earn a livelihood and is unable to refund to the defendant herein such sums of money paid to him by it for compensation and, therefore, cannot place the parties in status quo, and in lieu thereof, this plaintiff agrees and tenders to the defendant credit for all money paid him by it.'"

The excuse seems to have met with the approval of the Court of Civil Appeals, but the judgment of the trial court was reversed on other grounds.

The authorities are endless on the point, but after diligent search we have found none that exonerates a litigant in such character of case as the instant one from either tendering in some manner a return of the consideration received under such circumstances or alleging an excuse for not doing so.

For these reasons the appellee's motion for rehearing is overruled.