**PRODUCERS' SUPPLY & TOOL CO. v. ALLISON.** (No. 9679.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 29, 1921.)

1. **Appeal and error** ⬲⟿733—**Assignments held in violation of rules against multiplicity and generality.**

Assignments of error that court erred in rendering any judgment on the cross-action against plaintiff *held* to be in violation of court rules by reason of generality.

2. **Appeal and error** ⬲⟿736—**Grouped assignments as to suppression of deposition and judgment on cross-action held insufficient.**

Assignment of error grouping propositions as to suppression of deposition and correctness of judgment on cross-action *held* in violation of court rules by reason of multiplicity.

3. **Sales** ⬲⟿359(2)—**Evidence held to show parties' contemplated losses would result from delay in delivery.**

In seller's action for price of oil well casing sold, defendants' evidence *held* to show that it was within the contemplation of the parties at the time of contracting that losses from expenses of shutting down drilling operations would probably result from plaintiff's delay in shipping the casing.

4. **Sales** ⬲⟿348(1)—**That buyers had sold out to another no defense to buyer's cross-action for damages for delay.**

In seller's action for price of oil well casing sold, where defendant buyers brought a cross-action for damages from delay in delivery, consisting of shut-down expenses, the fact that buyers had sold the well they were drilling to a third party, who assumed the payment of plaintiff's debt and also shut-down expenses, was no defense to the cross-action, plaintiff not having recognized such third party, as a purchaser in any respect, and the third party, in such sale, having been paid by defendants a consideration for such assumption.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Suit by the Producers' Supply & Tool Company against R. H. Allison, in which L. W. Tarkington was made a party by the defendant's pleading. Judgment for the defendant Allison against the plaintiff on a cross-action, and also against the defendant Tarkington for any sum that defendant Allison might be compelled to pay on the judgment rendered against him and in favor of plaintiff. The judgment in favor of defendant Allison was set off against the judgment for plaintiff, and it was ordered that plaintiff have execution for the difference, and plaintiff appeals. Judgment for plaintiff affirmed, and judgment in favor of Allison against Tarkington left undisturbed.

Kirby, King & Keeble, of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellee.

DUNKLIN, J. R. H. Allison and Carrol York, composing the partnership firm of Allison & York, were the owners of certain oil leases in Taylor county, and while engaged in drilling an oil well on some of the land covered by the leases they entered into a contract with the Producers' Supply & Tool Company to purchase from that company 1,600 feet of 10-inch well casing to be used in that well, and the sellers agreed to deliver the same at a railway station known as York Spur, situated near the well. The contract of purchase and sale was evidenced by a written order signed by York and also signed by one E. B. Sayles, the agent and representative of the Producers' Supply & Tool Company. The price to be paid for the casing and the amount and kind of casing were all specified in the order. It was also stated in the order that the shipment should be made on June 1, 1919. The order was dated May 24, 1919. The Producers' Supply & Tool Company expected to buy the casing with which to fill the order from a manufacturer in Youngstown, Ohio, known as the Youngstown Sheet & Tube Company. Thereafter the partnership firm of Allison & York was dissolved, and Allison took over all the assets of the firm and assumed all its liabilities. Later one L. W. Tarkington purchased from Allison the same partnership assets and assumed all liabilities of the firm and constituent members thereof, under and by virtue of the contract of purchase of casing mentioned above.

This suit was instituted against R. H.

Allison by the Producers' Supply & Tool Company to recover a balance claimed to be due the plaintiff under the contract of purchase of the casing mentioned. Defendant Allison, after joining issue with the plaintiff upon the allegations contained in its petition, sought a recovery over against Tarkington, whom he interpleaded, for the amount of any judgment that might be rendered against him in plaintiff's favor. Allison also pleaded a cross-action for damages against the plaintiff for failure to deliver the casing within the time which he alleged plaintiff represented and agreed that the same would be delivered when the contract was entered into, and which representation he alleged was a material inducement to his firm to give the order in the first instance. In that connection it was alleged that plaintiff agreed and represented that the casing would be delivered at York Spur not later than June 15th, but it was not delivered until long after that time, during which delay the defendant incurred great expense in wages paid to drillers on the well, the drilling of which had been started before the order was given, and drillers were kept in the employment of defendant while waiting for the delivery of the casing; that these conditions and the reasonable expectation of the necessity for holding the drillers during this wait was known to the plaintiff at the time the order was given, and, being within the contemplation of the parties to the contract, plaintiff is liable to the defendant for the damages so sustained by him as a result of the delay in delivery of the shipment.

The case was tried before the court without a jury, and findings of fact and conclusions of law by the trial judge were filed, which were as follows:

"(1) During the month of May, 1919, the firm of Allison & York, a partnership composed of R. H. Allison and one C. York, were engaged in the drilling of a well for the discovery of oil and gas in Taylor county, Tex., said well commonly known as Hamilton No. 1, being drilled near Cedar Gap, in said county.

"(2) On or about the 24th day of May, 1919, the firm of Allison & York purchased from the plaintiff, the Producers' Supply & Tool Company, 1,600 feet of 10-inch 40-pound casing, said casing to be delivered at York Spur, in Taylor county, which spur was close to the well being drilled by the firm of Allison & York.

"(3) At the time said casing was sold to the firm of Allison & York the matter of delivery was discussed between the said firm and the agent of the plaintiff; that the plaintiff through its said agent represented to the firm of Allison & York that they could expect delivery of such casing within 2 weeks or 15 days from the time it was shipped from the factory; that the said firm of Allison & York informed the agent of the plaintiff that they would not place such order unless they could be assured of satisfactory delivery; that the said agent informed said firm that he was familiar with the conditions existing at the factory, and that said firm had been having shipments made, and that they could expect delivery at York Spur in 2 weeks or 15 days from the date of shipment from the factory, but I find that plaintiff did not absolutely guarantee delivery within 15 days.

"(4) The said firm of Allison & York relied on such representations and believed the same to be true, and, relying thereon, purchased said casing from the plaintiff; that the plaintiff agreed to have said casing shipped from the factory at Youngstown, Ohio, on the 1st day of June, 1919, said casing to be shipped by the Youngstown Sheet & Tube Company; that at the time of the placing of said order the plaintiff through its agent knew that said casing was being ordered and purchased for use in said Hamilton well No. 1 in Taylor county, which was then in the process of drilling.

"(5) The plaintiff did not have said casing shipped from Youngstown, Ohio, on the 1st of June as it had agreed to do, and in fact no shipment was made from Youngstown, Ohio, until on or after the 25th day of June, 1919. On or about the 25th day of June, 1919, under bill of lading dated June 19, 1919, certain pipe was shipped by the Youngstown Sheet & Tool Company consigned to Producers' Supply & Tool Company to plaintiff at York Spur, Coates, Tex.; that on or about the ——— day of August, 1919, said car arrived at York Spur, in Taylor county, Tex., but the car did not contain 10-inch 40-pound casing as purchased by the firm of Allison & York, but contained line pipe and certain mixed casing, which was not the material purchased or ordered by the said firm of Allison & York, and that the said firm did not accept said shipment, and immediately notified the plaintiff to that effect; that the said firm of Allison & York had prior to that time notified the plaintiff that they were shut down on account of the delay in delivery of the casing which the plaintiff had sold to them May 24, 1919. Several times during the month of July the said firm of Allison & York notified the plaintiff that said well was shut down awaiting the arrival of the casing and insisting upon delivery of the casing in accordance with their agreement. After the arrival of the car containing the line pipe and mixed casing on the ——— day of August, 1919, the said firm of Allison & York continued to insist upon the plaintiff's complying with its contract to deliver the casing sold, and that on or about the 13th day of September, 1919, the plaintiffs delivered to Allison & York at York Spur 600 feet of 10-inch casing; that said casing was delivered under the sale made by the plaintiff to said firm of Allison & York, May 24, 1919; that said original order had not been countermanded or rescinded or canceled.

"(6) The plaintiff and its duly authorized agent at the time of making the sale to the said firm of Allison & York knew that it was customary for the owners of the well to pay the expenses of a shut-down occasioned on account of such delay; that the plaintiff was informed by the said firm that they were being damaged from $70 to $100 per day on account of the delay in delivery of such casing. This information was conveyed to plaintiff in the early part of July, 1919. I further find that

the plaintiff did not comply with its agreement to have said casing shipped from the factory June 1, 1919, and that there was an unreasonable delay in delivery of the casing, and that on account of its said failure to comply with its agreement, and on account of the unreasonable delay in delivery of said casing, the defendant was damaged in the sum of $2,645; that said damage was occasioned on account of the failure of the plaintiff to comply with its representations and to comply with its agreement in having said casing shipped; and that damages followed on account of unreasonable delay in delivery was in contemplation of the parties at the time of the purchase of the casing. Carrol York sold his interest to defendant R. H. Allison prior to the institution of this suit, and the defendant R. H. Allison assumed the payment of all obligations due by said firm, and there is due the plaintiff for said casing, including interest to date of trial, the sum of $2,837.04. On or about the 8th day of August, 1919, the firm of Allison & York sold the well and leases and transferred certain moneys to the defendant L. W. Tarkington in consideration of which the said L. W. Tarkington assumed all obligations outstanding including the obligation herein sued on.

"I conclude that the defendant R. H. Allison should have judgment against the plaintiff the Producers' Supply & Tool Company on its cross-action filed herein for the sum of $2,345, and that the defendant R. H. Allison should have judgment over against the defendant L. W. Tarkington for any sum that the defendant Allison might be compelled to pay on account of the judgment rendered against him in favor of the plaintiff, that the judgment in favor of the defendant Allison should be set off against the judgment in favor of the plaintiff and the plaintiff have his execution for the difference, and that the defendant Allison have his execution against the defendant Tarkington for any sum which he (Allison) might have to pay on account of the judgment in favor of the plaintiff, and judgment is entered accordingly."

Upon request by counsel for plaintiff the following additional findings were made by the trial judge, such findings being embodied in the request, and adopted by the court:

"The defendant Tarkington did pay to the drillers on account of shut-down the sum of $—— in full settlement of this claim.

"Defendant R. H. Allison did not pay to any person any sum of money on account of alleged shut-down expenses growing out of the alleged failure of the plaintiff in this case to deliver to the said Allison certain 10-inch casing to be used on the well being drilled in Taylor county by the said Allison.

"The defendant R. H. Allison has never paid to the plaintiff any sum of money because of the sale to the said Allison by the plaintiff of the 10-inch casing in controversy in this case.

"As between the defendant R. H. Allison and the defendant L. W. Tarkington, that the defendant Tarkington assumed not only the amount due by defendant Allison to the Producers' Supply & Tool Company on account of the 10-inch casing in controversy, but also assumed and agreed to pay all obligations owing by the defendant Allison growing out of the drilling by the said Allison of the Tarkington No. 1 well in Taylor county.

"Said Tarkington paid to plaintiff the bill for casing less an amount equal to the shut-down expenses paid."

Judgment was rendered in accordance with those findings and conclusions, and the plaintiff has appealed.

The first two assignments of error presented by the appellant are without merit. They are addressed to the alleged action of the trial judge in overruling plaintiff's motion to suppress certain depositions of Carrol York. They are predicated upon a bill of exception appearing in the record showing that the motion to quash the depositions was overruled. But a supplemental transcript has been filed which shows a later order entered in the lower court showing that the bill of exception referred to above was approved through mistake on the part of the trial judge, and that as a matter of fact plaintiff's motion to suppress the depositions was not overruled, but was sustained.

[1, 2] Two other assignments of error are presented. The first is very general, reading as follows:

"Because under the findings of fact made by the court and on file herein the defendant R. H. Allison was not entitled to any character of judgment over against this plaintiff, much less for such an amount as was awarded by the court trying this case."

The second contains a statement of the defendant's pleading, coupled with a recitation of findings of fact by the trial court, and numerous propositions of law, together with arguments to show that the defendant Allison had no interest in the subject-matter alleged in his cross-action against plaintiff. That assignment concludes with the statement that appellant in seeking a reversal of the judgment relies on only two propositions: First, that the court erred in suppressing the depositions of Carrol York; and, second, that the court erred in rendering any judgment on Allison's cross-action against the plaintiff for the reasons urged in both of the two assignments, each of which is submitted as a proposition, and both are grouped in appellant's brief and discussed together.

The assignments seem to be in violation of court rules by reason of multiplicity and generality. Aside from those apparent objections, we shall consider the separate propositions submitted under those two assignments. It is contended that, since the defendant in his cross-action alleged and declared upon an express contract to deliver the casing at York Spur on June 15, 1919, he cannot recover upon an implied contract to deliver it within a reasonable time, nor because plaintiff did not ship the casing from Youngstown on June 1, 1919. A sufficient answer to that

contention is the finding of the court, supported by the evidence, in effect, that the contract, as alleged, was in fact made, although it was supplemental to the written order for the casing, and no assignment is presented to proof of it.

Plaintiff's agent, E. B. Sayles, testified in part as follows, with reference to the time and occasion when he procured the order for the casing from Allison & York:

"I knew at the time that Allison & York were drilling two or three wells. I did not know for what particular well this was. * * * I knew at that time in selling supplies to oil well drillers that they as a general rule stood the expense of a shut-down and things of that kind, awaiting the arrival of material."

Carrol York, one member of the firm, testified as follows:

"Mr. Sayles approached me to sell the string of casing for our well. I told Mr. Sayles that we had been having trouble with delivery of supplies, and that the only consideration that I would establish a new credit rating and switch my business to his company would be to their guarantee and assurance of making their word good as to time of delivery of supplies, and with the understanding and agreement that this casing would be delivered on or before the 15th day of June, 1919. I furnished a credit rating and gave him the order. Mr. Sayles thoroughly understood that we were buying this casing for the purpose of use in drilling of Hamilton well No. 1. I, acting for the firm, would not have given such order to the Producers' Supply & Tool Company had it not been for said promise to deliver said casing at York Spur not later than the 15th of June, 1919."

[3] According to testimony offered by defendant, plaintiff was repeatedly notified of the expense for hiring drillers, which was being incurred by reason of the delay; but, under the evidence quoted above, the plaintiff was chargeable with the knowledge of the probability of such losses, independent of the notices so given, since it was within the contemplation of the parties at the time the contract was made that such losses would probably result from the plaintiff's failure to comply with its contract of sale and delivery.

[4] The fact that Allison sold the well to Tarkington, who assumed the payment of plaintiff's debt and also the shut-down expenses, was no defense to Allison's cross-action. Plaintiff's contract of sale was made with Allison & York. Tarkington was a stranger to it. Its obligation to Allison & York to deliver the casing not later than June 15th was made for the benefit of Allison & York, and not for Tarkington's benefit, and plaintiff has sued those purchasers and has not recognized Tarkington as a purchaser in any respect. It cannot have a recovery upon that contract and at the same time escape its bur-

dens. The sale by Allison to Tarkington could not have the effect to relieve plaintiff of any of those burdens. Furthermore, in Allison's sale to Tarkington the latter was paid a consideration for the assumption of plaintiff's debt and the shut-down expenses, and, under such circumstances, to deny Allison's recovery upon the obligation which plaintiff owed to him would certainly be inequitable, and we know of no rule of law which would justify such a result. It is a familiar rule that money collected on any insurance policy insuring personal injuries from accidents cannot be pleaded as a defense to a suit against a railroad company for damages occasioned by the negligence of the company. M., K. & T. Ry. Co. v. Rains (Tex. Civ. App.) 40 S. W. 635; M., K. & T. Ry. Co. v. Flood, 35 Tex. Civ. App. 197, 79 S. W. 1106.

We find evidence in the record to support the finding that the shut-down expenses amounted to even more than the sum allowed by the trial court therefor.

For the reasons indicated, the judgment from which appellant has prosecuted this appeal is affirmed; while the judgment in favor of appellee Allison against Tarkington, from which no appeal has been prosecuted, is left undisturbed.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes