**DONOHO et al. v. HUNTER et al.**
**(No. 6755.)**

(Court of Civil Appeals of Texas. San Antonio. May 17, 1922. Rehearing Denied June 14, 1922.)

**1. Mines and minerals ⬤⟩54(4)—Petition for rescission for fraud held sufficient.**

A petition to rescind a sale of land, alleging that the defendants, who had contracted to furnish an abstract showing clear title and to give a warranty deed, had failed to do so, but had given a deed with special warranty, and that defendants knew plaintiffs desired to purchase mineral lands for speculation and had falsely represented that the mineral rights in the land were conveyed thereby, whereas there was an outstanding permit granted by the state for the mineral rights to such lands, and that without the mineral rights the lands were worth not to exceed $2 an acre, instead of the $15 an acre which plaintiffs paid for them, *held* to state a good cause of action for rescission.

**2. Mines and minerals ⬤⟩54(4)—False representation to purchaser there was no valid mineral lease on land is material.**

A false representation that there was no valid outstanding mineral lease on the land was material, and, if false, justified rescission of the contract for the purchase of the land induced thereby.

**3. Mines and minerals ⬤⟩54(4)—Concealment by vendor of recorded mineral permit held fraudulent.**

Where one of the vendors took the purchaser to the county clerk's office to convince the purchaser of the vendor's statement there was no outstanding mineral lease against the land, but there showed him only the records appearing in the abstract, which did not include a permit granted by the state for exploration of the lands for minerals, which was on record, the conduct of the vendor was fraudulent,

---

⬤⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and indexes

though the registration of the permit gave constructive notice of its existence.

**4. Mines and minerals ⊚⇒54(4)—Mineral permit from General Land Office constitutes cloud on title.**

A permit issued by the General Land Office for the exploration of land for minerals is prima facie proof of the state's prior grant of the right to prospect for the minerals and that the grantee has complied with the requisites of the law, and is a cloud on the title to the land.

**5. Mines and minerals ⊚⇒54(4)—Burden is on vendors in action for fraud to show outstanding mineral permit was void.**

In an action to rescind a purchase of land because the vendors fraudulently misrepresented there was no outstanding lease of the mineral rights therein, whereas the General Land Office had given a permit to explore the lands for such minerals, which the vendors claimed was void because the lands were not such as were subject to such a permit, the burden was on the vendors to prove the invalidity of the permit.

**6. Mines and minerals ⊚⇒54(4)—Mineral permit by state, even if voidable, is cloud rendering title unmarketable.**

A permit granted by the state to explore lands for minerals, even if voidable, was a cloud on the title to the lands which rendered it unmarketable.

**7. Trial ⊚⇒351(5)—Special issues as to fraud held sufficient to justify refusal of requested issues.**

In an action to rescind a purchase of land for fraudulent misrepresentations by the vendors, special issues submitting to the jury whether the vendors represented there was no mineral permit on the land, whether that representation induced the purchase, whether the purchasers relied on the representation in parting with their money, whether the purchasers would have paid for the land if they had known the representation was false, and whether the purchasers had acquired knowledge of an outstanding mineral permit before they paid for the land, sufficiently submitted the material issues which determined the rights of the parties, and warranted the refusal by the court of other special issues requested by defendants.

**8. Appeal and error ⊚⇒1048(3)—Leading question to plaintiff held harmless.**

In an action to rescind a purchase of land for fraudulent misrepresentations that there was no outstanding mineral permit against the land, the overruling of objection to a question, asked one of the plaintiffs, whether he would have parted with his money if defendants had not told him there was no permit, on the ground that the question was leading, was not prejudicial to defendants, since it suggested an affirmative rather than a negative answer, and especially where the same testimony was elicited without objection from other witnesses.

**9. Appeal and error ⊚⇒1067—Refusal of requested charge as to burden of proof on whole case held harmless.**

Where the court had charged the jury that the burden was on the plaintiff as to four of the five issues submitted, a request by defendants for a charge that on the whole case the burden was on the plaintiffs was insufficient to require a charge that the burden was on the plaintiffs as to the issues not covered by the charge given, and the refusal of the requested charge was harmless.

**10. Vendor and purchaser ⊚⇒117, 123—Purchaser of other land in same transaction held not necessary party to rescission for fraud, nor were plaintiff purchasers required to restore such land.**

Where defendants had previously sold 320 acres of land to a purchaser, who resold 300 acres of it to plaintiffs at an advanced price, and by agreement of all parties the contract for the whole tract and the deed of conveyance were made to plaintiffs, who thereupon conveyed 20 acres to the original purchasers and also made a payment to cover the difference in the contract prices, the original purchasers are not necessary parties to a suit by plaintiffs to rescind their contract for fraudulent misrepresentations, if such purchasers were satisfied with the land they received, and plaintiffs were not required, as a condition to such rescission, to return to defendants the 20 acres conveyed at defendant's request to the original purchasers.

**11. Contracts ⊚⇒266(2)—Party unable to restore status quo because of acts of fraudulent party need return only what he received.**

Where a party seeking to rescind a contract for the fraud of the adverse party is unable because of the acts of the party guilty of the fraud to restore the status quo, he is required, as a condition precedent to rescission, to return only what he received under the contract.

**12. Contracts ⊚⇒266(2)—Complete restoration to statu quo not necessary to rescission.**

The right to rescind will not be denied because the parties may not be put precisely as they were because the defrauded party, before discovering the fraud, has parted with a portion of the property, but the requirements of justice are satisfied by the return of the property retained by the defrauded party with compensation for the remainder.

**13. Equity ⊚⇒66—He who seeks equity must do equity.**

It is well settled as a general proposition of equity jurisprudence that one who seeks equity must do, or offer to do, equity.

**14. Contracts ⊚⇒265—Party must be placed as nearly as possible in statu quo.**

A plaintiff cannot have an entire rescission of a contract for fraud of the other party unless he places the other party in the same position, as nearly as possible, as he was when he made the deal.

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Trial ⬦352(1)—Requested special issue held on weight of evidence.**

A request to submit to, the jury whether defendants received any consideration from plaintiffs for making the deed to plaintiffs, instead of to the original purchaser, was properly refused as on the weight of the evidence, in that it assumed the plaintiffs contracted to have the deed made to them, instead of to the original purchaser, and it was immaterial whether there was any special consideration moving to defendant for making the deed as it was made.

**16. Trial ⬦352(1)—Requested special issue held confusing.**

A special issue requested, as to whether defendants made the deed to plaintiffs instead of to the original purchaser, at the request of the original purchaser or the plaintiffs, or either of them, was confusing, and could not be answered intelligently yes or no, and it was proper to refuse, especially where it was wholly immaterial under the issue in the case.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Carl Hunter and others against C. D. Donoho and others to rescind a contract for the purchase of lands because of fraud. Judgment for plaintiffs, and defendants appeal. Affirmed.

R. S. Phillips and S. C. Padelford, both of Fort Worth, for appellants.

Marvin H. Brown and Charles T. Rowland, both of Fort Worth, for appellees.

COBBS, J.   This suit was instituted by appellees against appellants to rescind a sale for lands based on fraud because of the failure of appellants to carry out and perform the covenants and agreements expressed in the written contract in relation to the sale of land, and to cancel and annul the deed executed by appellants to appellees, and to require appellants to accept a reconveyance, by a similar deed, tendered them, and finally for judgment against each and all of the appellants jointly and severally in the sum of $5,000 with 6 per cent, interest per annum from the ———— day of April, 1920.

The alleged contract of sale by and between the parties obligated the appellants to sell and convey to appellees by a proper deed of conveyance the east half of section 4 in block 55, public school lands, in Reeves county, Tex., in fee simple, and excepting only the unpaid balance of the purchase price owing to the state and one-sixteenth of the minerals of said land reserved by the state and at and for the purchase price of the land for $15.00 per acre, being represented to be 320 acres. It was agreed that appellants would furnish an abstract of title to said lands brought down to date showing a good merchantable (no doubt meaning marketable, C. J. Blomstrom et al. v. George

A. Wells [Tex. Civ. App.] 239 S. W. 227) title free and clear of all objections. While it did not stipulate a title with general warranty, they represented at the time of the negotiations that such a title would be given; but the words in the contract itself with reference to making the deed could have no other meaning.

That the trade was consummated and closed in Fort Worth on or about the 15th day of April, 1920, when appellee Carl Hunter delivered to appellants C. D. Donoho and P. K. Thompson appellees' check for the sum of $3,991, which was paid. That said appellants then and there represented that the conveyance for said land then delivered was a general warranty deed, but appellees, being inexperienced, did not see or understand, from the words following the general warranty clause inserted in the printed deed called a general warranty deed, "by through or under me," and did not know that they were not given such deed as agreed upon, but were given a deed with terms of qualification that reduced it to little more than a quitclaim deed, being a special warranty. That appellants knew that appellees were desirous of purchasing mineral lands for speculative purposes, and appellees made particular inquiry of appellants in respect thereto and were informed by them that there were no mineral rights in any other than 1/16 reserved by the state. That the abstract did not show, nor did appellees know or have any information whatever, that appellants did not own or have the right to the oil and gas and minerals therein and thereunder. Without such rights, the surface of such land was not then, nor now, worth more than the reasonable sum of $2 per acre, all of which was known to appellants, and they upon their fraudulent representations induced appellees to believe that the mineral rights passed by said sale to appellees and upon which they relied, and, for that reason alone, they were induced to make the purchase. After payment of said money and the execution and delivery of the deed, appellees ascertained, which was not shown on the abstract furnished, on August 28, 1918, that E. E. Bartholemew had obtained a mineral permit, which is numbered 2722, and was then an existing outstanding superior prior right on file in the General Land Office, to prospect for oil and gas on the lands in controversy.

That right to prospect for oil is the most valuable right to said land, and creates a cloud upon the title, and that, together with the special warranty clause in the deed, renders the title unmarketable, all of which constituted a fraud upon appellees.

The petition further alleged the agreement was finally consummated and closed in Fort Worth, giving appellee 300 acres at $15 per

acre for the total consideration of $4,500. Appellee thereupon paid $4,000 to appellants, and upon their instructions paid A. G. Anderson the sum of $500 and executed to A. G. Anderson a deed to 20 acres as represented by appellants for his commissions due him for making said sale to appellees.

The appellants answered by general denial and plea of not guilty and make by cross-bill A. G. Anderson a party to the suit, though he was never served with process.

The court overruled the general and special exceptions of appellants and submitted the case on special issues to the jury, and upon the return of their answers thereto, among other things therein, entered the following judgment:

"The jury having found, in answer to the several special issues submitted to them by the court, in favor of the plaintiff, and the court being fully advised in the premises as to the law of the case, is of the opinion that the plaintiffs should and ought to recover of and from the defendants, jointly and severally, and it is therefore the order, judgment, and decree of the court that the plaintiffs, Carl Hunter and M. M. Collins, do have and recover of and from the defendants, T. P. Weathered, C. D. Donoho and P. K. Thompson, jointly and severally, the sum of $4,500, together with 6 per cent. per annum interest thereon from April 16, A. D. 1920.

"It is further ordered, adjudged, and decreed by the court that the deed dated April 15, 1920, and executed by the defendant, C. D. Donoho, and delivered to the plaintiffs, Carl Hunter and M. M. Collins, conveying the east one-half of section 4 in block 55, public school lands in Reeves county, Tex., be and the same is hereby in all things canceled, annulled, and declared void, and the same is hereby, by the court, so canceled, annulled, and avoided."

The large transcript and voluminous briefs of parties have made the investigation of the true issues in the case quite laborious. The appellants' brief consists of 161 printed pages, 81 assignments of error, and 30 propositions.

Appellees have soundly criticized the brief of appellants, and insist that many of the assignments and propositions should not be considered by this court, because they are in direct violation of the rules prescribed for briefing. Many of the assignments are multifarious, argumentative, and not germane to the bills of exceptions; and propositions are not germane to the assignments in many instances. However, as it would require too much space to separately discuss such objections and write upon each separately, we will consider each as presented and discuss the real and material issues necessary to the final determination of this case. Producers' Supply & Tool Co. v. Allison (Tex. Civ. App.) 238 S. W. 997.

The court submitted the case upon special issues, to wit:

"Question 1. Did the defendants or either represent to the plaintiffs that there was no permit to prospect for minerals on the lands in question. Answer 'yes' or 'no.' Answer: Yes.

"Question 2. Were the representations, if any, with reference to the existence of a mineral permit on the land in question true? Answer 'yes' or 'no.' Answer: No.

"Question 3. Did the plaintiffs rely upon the representations of the defendants, if any, relative to the existence of mineral permits on the lands in question, and were the plaintiffs thereby induced to part with their money? Answer 'yes' or 'no.' Answer: Yes.

"Question 3-A. State whether or not plaintiff would have paid to the defendants the money, had not such representations been made by the defendants. Answer: No.

"Question 4. Prior to the time that plaintiff Carl Hunter accepted the deed to the land in controversy and paid to the defendant the money, had he through his own efforts and investigation learned or been informed by others that a mineral permit had been given on said land and placed of record? Answer: No."

There were 29 special issues and instructions and issues requested by appellants and refused, all assigned as error. Appellants filed motion for judgment, and in arrest of the judgment, all of which were overruled.

The appellant has presented six assignments of error, complaining that the court erred in overruling their exceptions, general and special, to the appellees' petition.

[1] We do not believe there was any merit in the exceptions. The cause as pleaded was sufficient to let in all the proof. It stated a good cause of action, and the assignments are overruled. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

The seventh assignment of error complains at the action of the court in overruling the application. We see no error committed by the court in refusing to continue to make Anderson or Wade a party. Anderson's whereabouts were unknown, and not sufficient diligence was shown to make either a party; besides, it was not shown they were necessary parties.

The appellants' assignment that the court erred in not instructing a verdict for the appellant cannot be sustained. This case depends too largely upon issues of fact. And such being the case, the court had no authority to take it from the jury, and deny to the appellees a trial before a jury upon disputed issues of fact.

The eighth assignment complains that the court erred in allowing certified copies to be introduced in evidence of the prior application of the E. E. Bartholemew permit from the General Land Office to prospect for oil and gas, granting the same, together with other evidence from the General Land Office relating thereto, because same were alleged to be null and void. This relates to the very material issue involved; it is the, so to

speak, gravamen of the case; it is the pivotal or turning point upon which is laid the taint of fraud that is relied on for rescission. It was for this reason appellees sought to rescind the sale, because appellants knew and understood at the very time the purchase was made that it was sought because appellees believed there was gas, oil, or other minerals in the land and were not supposed to be paying the price of $15 per acre for surface land not worth more than $2 per acre.

[2] The appellants represented that there was no valid mineral lease on the land, that there had been, but the same had been released. Appellees believed such representations and were thereby induced to make the purchase. These representations were material and the jury has found them to be false. Nimmo v. O'Keefe (Tex. Civ. App.) 204 S. W. 883; Morris et al. v. McGough et ux. (Tex. Civ. App.) 230 S. W. 1092; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Johnson v. Stratton, 6 Tex. Civ. App. 431, 25 S. W. 683.

[3] The proof shows that Hunter, appellee, was taken by Weathered, one of the appellants, to convince him of the truth of their statements, to the county clerk's office, but showed only such records as appeared in the abstract, and did not show appellee the Bartholemew permit, application, or records relating thereto. Weathered represented to appellee Hunter, as a fact, not as an opinion, that the title was good and there was no outstanding permit, the truth of which he vouched for, and Hunter, appellee, believed such representations to be true, relied upon it, and made the purchase. Morris v. McGough (Tex. Civ. App.) 230 S. W. 1092; Industrial Transp. Co. v. Russell (Tex. Civ. App.) 238 S. W. 1030. While as a matter of course the proper registration of such an instrument imposes constructive notice upon the world, yet the statement of facts surrounding this transaction lulled the appellee into security. The conduct and misrepresentations of appellant, who knew of appellee's purpose to purchase lands with all mineral rights thereto, the jury has found constituted a fraud.

[4] They owed appellee the duty to disclose the actual facts which were concealed. Appellee contracted for a complete abstract and a marketable title, and he got neither. Such a permit in the General Land Office is prima facie proof of the state's prior grant to prospect for minerals, and, further, that the grantee has complied with the requisites of the law. It is a cloud upon the appellee's title to the land, and to that extent constitutes an adverse valuable claim and interest, which perhaps may become more potent and valuable than the land upon its surface.

[5, 6] If, as claimed by appellants, the lands are such as the Commissioner of the General Land Office cannot issue an oil permit upon, under the statute, that burden was on the appellants and they have shown nothing in support of such contention. Cotten v. Willingham (Tex. Civ. App.) 232 S. W. 572. If the permit which appellants represented as not existing on the land be merely voidable, the misrepresentation would still be a material one. The attempted purchase was for the purpose of selling in the market mineral lands and not purchasing lands with incumbrances that clouded the title or tended to depreciate its marketable value, requiring disputes and lawsuits. Nimmo v. O'Keefe (Tex. Civ. App.) 204 S. W. 883; Hester et al. v. Shuster (Tex. Civ. App.) 234 S. W. 713.

[7] The jury have found distinctly that appellants made the representation that there was no mineral permit on the land and that representation induced the purchase; that appellees relying on the same were induced to buy and part with this money; that they would not have done so, had not such representations been made by appellants; that appellees would not have accepted the deed or paid the money, had they, through their own efforts and investigation, learned or been informed by others that a mineral permit had been given on said land and placed on record.

These issues and the findings of the jury seem to comprehend the material issues of the entire case and settle all the questions in the transaction that appellees challenge on the ground of fraud. The special objection raised to the charges and assignments of error challenging the same, and special charges requested by appellants and refused by the court, add nothing to the clearness or fullness of the issues.

All assignments challenging refusal of the court to submit issues requested by appellants to be charged to the jury in the forms presented are without merit and are overruled. Morris v. McGough (Tex. Civ. App.) 230 S. W. 1093.

[8] Objection was made by appellants to the question "Carl, if the defendants had not told you at that time that there were no mineral permits on this land, would you have parted with your money and closed this transaction," and the error assigned thereupon as leading, etc., we think harmless. Johnson v. Stratton, 6 Tex. Civ. App. 431, 25 S. W. 682. It suggests an affirmative rather than a negative answer. U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 726, Id., 101 Tex. 473, 108 S. W. 1165; Able v. Sparks, 6 Tex. 349. The same testimony, without objection, was elicited from other witnesses. The assignment is overruled.

The court properly instructed the jury that the burden of proof was on appellees to establish by a preponderance of the evidence the affirmative answer to questions 1, 2, and 3, and 3-A. This was in respect to the ma-

terial issues in the case upon which the appellees predicated the right to recover. The special issue requested by appellants for further instruction to the jury on the burden of proof was: "To instruct the jury that the burden of proof upon the whole case is upon the plaintiff to establish this case by a preponderance of the evidence." The court, in the instruction to the jury on the burden of proof, eliminated No. 4 therefrom.

That instruction, as set out above, was in respect to appellees' "own efforts and investigation learned or been informed by others that a mineral permit had been given on said land and placed of record." Buchanan v. Burnett, supra.

[9] The charge requested by appellants was as to the burden on the whole case, the court having already charged as to the burden of proof on the other issues, and to have given this general charge would be charging practically again on the same issues, and its refusal was therefore harmless.

Not having directed the charge to the alleged omission of the court in not including No. 4 in the charge in respect to the burden of proof, the objection was waived. Besides, it was harmless error, both in the omission and in the refusal of the court to give. Cotten v. Willingham (Tex. Civ. App.) 232 S. W. p. 572.

[10] An important question is raised in this case by many assignments involving serious consideration in respect to whether or not a rescission can be had because of the absence of A. G. Anderson, who acquired 20 acres of the land and a money consideration of $500. But appellees do not attempt to rescind as to those 20 acres, or seek any damages in respect thereto, but leave out of consideration that portion of the trade. Appellants sought, by cross-bill, to bring Anderson before the court, but never secured service on him. Anderson had no interest in the 300 acres in controversy. The facts presented show that the title to the surface lands was in C. D. Donoho, who was holding the same for the appellants, who were jointly interested therein, and appellees actually paid them in cash $4,000. As a part of the transaction, appellants caused appellees to pay Anderson $500 in cash and to convey to Anderson 20 acres of the 320 acres, so that appellees only secured in the purchase 300 acres. All of this was done at one and the same time by the interested parties.

It was also shown that appellees tendered to appellants a proper deed reconveying the lands acquired by them to place appellants in statu quo. Anderson was willing to reconvey to appellants the land he acquired in the transaction. Though appellee may have, in the original transaction, purchased Anderson's option, to purchase the land, it would not change the status of the parties, because the conveyance at the time put the title in Anderson of the 20 acres and relieved appellants from the legal consequences of this alleged fraud and misrepresentation in the sale to appellees to that extent. Anderson was not a necessary party to this suit for a rescission. While it may be said it has some of the elements of a partial rescission, appellees in the transaction only secured 300 acres; the other 20 going to Anderson under the direction of appellants. If Anderson or his vendees are willing to keep the 20 acres, notwithstanding the outstanding mineral lease, and appellants permit it, that is no concern of the appellees. Appellees have restored, or offered to restore, all of the 300 acres they purchased and received by them in any manner satisfactory to appellants; they can do no more, and thus the law is satisfied. They got no interest, benefit, or profit by the 20 acres conveyed to Anderson, though it was a part of the fraudulent sale. It does not lie in the mouth of appellants to complain that Anderson, too, is not here complaining, or that a full rescission cannot be made of all the 320 acres of land, for the appellants by their own acts have rendered it impossible to restore the additional 20 acres.

[11] When parties entangle themselves in a fraudulent transaction so that the injured party cannot be freed to do full equity by tendering all that passed by the transaction, "the law only requires the injured party to restore what he has received, and as far as he can, undo what had been done in the execution of the contract—that is all the party defrauded can do, and all that honesty and fair dealing require of him."

This just and equitable rule is well set forth in 9 Corpus Juris, p. 1210, par. 96. See, also, the authorities cited in notes 47 and 48 in same paragraph.

[12] The right to rescind will not be denied because the parties may not be put precisely as they were when a return of all the property received is rendered impossible by reason of his having parted with a portion of the property, so received before discovery of the fraud, the requirements of justice would be satisfied by the return of the property retained, with compensation for the remainder. Corpus Juris, vol. 9, pp. 1212, 1213.

In the assignments of the appellants and many times presented by propositions that the court should have instructed a verdict for them because appellees could not place them in statu quo, we quote appellants' eighth proposition, because it shows the admission of facts material on the very question under discussion here as to their claims, and is conclusive against them that no partial rescission can be made. It is as follows:

"A plaintiff cannot plead and swear to a certain state of facts, and then in another portion of his testimony swear to facts which contradict his pleadings and sworn testimony, and since the pleadings of the plaintiff and his sworn testimony on cross-examination and sworn testimony of the three defendants and

the witness Golden all stated, and the written contract between the plaintiffs and the said Anderson all show, that the defendants contracted to sell the 320 acres of land to A. G. Anderson at $12.50 per acre, and that then the said Anderson contracted to sell 300 acres of the land to the plaintiffs at $15 per acre, and that the said Anderson and the plaintiffs requested the defendants to deed this land directly to the plaintiffs, and that the plaintiffs would pay to the defendants the amount due from Anderson to them and pay to the said Anderson $500 and redeed to him 20 acres of the land. And since the plaintiffs have, before the institution of this suit, deeded 20 acres of the land to said Anderson, and who deeded 10 acres of same to one Wade, there being an outstanding title to said 20 acres in said parties and such being the record in this case, the court should have peremptorily instructed a verdict in favor of the defendants (Tr. p. 41), or the court should have continued this case and required the said Anderson and Wade to be made parties to this suit, and erred in not doing so. See the statement of the nature and result of this suit and the statements under the first proposition above, which are referred to and adopted hereunder. Black on Rescission, etc., vol. 2, p. 1506, §§ 657 and 661."

[13, 14] It is well settled as a general proposition of equity jurisprudence that one who seeks equity must do or offer to do equity. Further, that a plaintiff cannot have an entire rescission of the trade unless he places the party in the same position, as nearly as possible, as he was when he made the trade. Burson v. Blackley et al., 67 Tex. 5, 2 S. W. 668; Paul v. Chenault et ux. (Tex. Civ. App.) 44 S. W. 681; Bonner Memorial Home v. Colin County Nat. Bank, 57 Tex. Civ. App. 313, 122 S. W. 432–433; McKay v. Phillips (Tex. Civ. App.) 220 S. W. 176.

While the question seems a close one, yet, under the circumstances of this trade and under the facts disclosed, it does not seem that such a state of affairs exist, as that appellants suffer any injury by letting the 20 acres owned by Anderson & Wade remain as it is. The jury has found that the appellants perpetrated a fraud in the sale to appellees, and Anderson & Wade, so far as this transaction is concerned, are satisfied. Equity will not extend its long arm and reach out very far to protect the perpetrators of a fraud.

[15] The charge requested by appellants and refused by the court, "Did the defendants receive any consideration from plaintiffs for making the deed to plaintiffs instead of Anderson," was properly refused, because it is on the weight of evidence, in that it assumes that plaintiff contracted to have the deed made to them instead of Anderson; and it is undisputed appellants received $4,000 in cash for making the deed. It is immaterial whether or not there was any special consideration moving to them for making the deed directly to appellees. The written contract shows they so contracted, and the proof shows they were paid their price.

[16] The charge requested by appellants, "Did the defendants make the deed to plaintiffs instead of to Anderson at the request of Anderson or the plaintiffs, or either of them," is confusing and could not be intelligently answered yes or no. It was properly refused in the light of the facts proven on the issue, and wholly immaterial. If Anderson or his vendees are willing to retain the land with the mineral rights gone, we cannot see how appellants can demand that the matters between appellants and appellees should be postponed.

We have carefully considered the appellants' brief and all the errors assigned. The case has been fairly tried, and the controlling issues, material to the disposition of this case, have been properly submitted, and the findings of the jury supported by the testimony. Finding no reversible error assigned, the judgment of the trial court is affirmed.