**DONOHO et al. v. HUNTER et al.**
(No. 433–3869.)

(Commission of Appeals of Texas, Section B. Oct. 14, 1925.)

**1. Mines and minerals ☞54(4) — Purchasers held entitled to recover for false representations as to mineral permit, though their abstract would have shown existence thereof.**

In action to rescind purchase of land because vendors fraudulently misrepresented there was no outstanding lease of mineral rights therein, whereas general land office had given permit to explore lands for such minerals, plaintiffs *held* entitled to recover, notwithstanding that their abstract would have shown existence of permit, where it had not been prepared at time of transaction, and they were assured that it would show no oil permit.

**2. Notice ☞14—Record presumed to carry notice of its contents.**

Record will be presumed to carry notice of its contents, where parties are silent.

**3. Mines and minerals ☞54(4)—Purchasers held entitled to rescind purchase of land without returning entire tract conveyed.**

In action to rescind purchase of land because vendors fraudulently misrepresented there was no outstanding lease of mineral rights therein, purchasers *held* entitled to recover without returning to vendors entire tract conveyed to them, where part of such tract, at request of vendor, had been conveyed to real estate broker so that he could be paid his commission.

**4. Contracts ☞266(2)—Parties must be placed in statu quo, when remedy of rescission employed to overturn a fraud.**

Ordinarily, parties must be placed in statu quo, when remedy of rescission is employed to overturn a fraud.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Carl Hunter and others against C. D. Donoho and others. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (242 S. W. 282), and defendants bring error. Affirmed.

D. U. Odell, R. S. Phillips, and S. C. Padelford, all of Fort Worth, for plaintiffs in error.

Marvin H. Brown and Chas. T. Rowland, both of Fort Worth, for defendants in error.

POWELL, P. J. This case has given us much difficulty, not because the questions presented are so intricate, but because of the number of assignments in the application. It contains 80 typewritten pages, with 53 assignments of error. If we should treat each assignment, it would necessarily make our opinion unbearably long. We have carefully gone through the application, considering each assignment upon its own merits. Having done so, we have concluded that the trial court entered the correct judgment, and that the Court of Civil Appeals did not err in affirming it. See 242 S. W. 282.

The opinion of the Court of Civil Appeals, published as aforesaid, treats all the leading questions. We think its treatment of them reaches the right conclusion, and that the authorities cited sustain the principle laid down in each instance. The opinion of the Court of Civil Appeals states the case fully, and we doubt if we can add anything by stating the facts and discussing even some of the points involved. But we will give enough of the facts to render intelligible the points we shall treat ourselves. After wading through this massive record, we feel very much like the Court of Civil Appeals did when it said:

"The large transcript and voluminous briefs of parties have made the investigation of the

true issues in the case quite laborious. The appellants' brief consists of 161 printed pages, 81 assignments of error, and 30 propositions. "Appellees have soundly criticized the brief of appellants, and insist that many of the assignments and propositions should not be considered by this court, because they are in direct violation of the rules prescribed for briefing. Many of the assignments are multifarious, argumentative, and not germane to the bills of exceptions; and propositions are not germane to the assignments in many instances. However, as it would require too much space to separately discuss such objections and write upon each separately, we will consider each as presented and discuss the real and material issues necessary to the final determination of this case. Producers' Supply & Tool Co. v. Allison (Tex. Civ. App.) 238 S. W. 997."

Now, briefly stated, what is this case any way? It is this: On the 12th day of April, 1920, one C. D. Donoho, acting by his agent, T. P. Weathered, agreed to sell, and Collins and Hunter agreed to purchase, the east half of section 4, block 55, public school lands of Reeves county, Tex. Donoho claimed to own this land in fee simple, except an unpaid balance on the purchase price due the state of Texas, and a one-sixteenth of the minerals reserved by the state. This land was to be conveyed for $15 per acre, and Donoho was to furnish an abstract showing a merchantable title thereto. It appears that on April 15, 1920, Donoho made a special warranty deed for $4,800 to the 320 acres to Hunter and Collins. In the meantime. Donoho and his partner Thompson had listed this land with a real estate broker named A. G. Anderson. They had agreed to give Anderson as his commission all that he could get for the land above $12.50 per acre. Under that trade Donoho would get $4,000 for the entire tract. Instead of deeding the 320 acres direct to Anderson, Donoho and all parties agreed that the whole tract would be deeded by Donoho to Hunter, and that the latter could, in turn, deed 20 acres to Anderson, and pay him $500 in cash also. That was done. Donoho received the $4,000 from Hunter, that being the amount he would have received from Anderson had he deeded the 320 acres direct to Anderson. At the same time Anderson received his commission of $800, being $500 in cash and 20 acres of land at $15 per acre. And Hunter and Collins paid out a total of $4,500 for the 300 acres they received at $15 per acre.

Anderson was a lease broker. He brought Donoho and Hunter together. At the instance of Donoho, Hunter and Collins deeded over the 20 acres of land to Anderson, and also paid him the $500 commission which Donoho said he owed him.

This land had a value of only about $2 per acre, except for the oil prospects. It was therefore chiefly valuable as an oil proposition; and a value of that kind depended largely upon quick sale. Furthermore, a quick sale of a lease must, in turn, depend upon a good title.

Now the purchasers did not wait for the completion of the abstract, because Donoho's agent, Weathered, told them there was no mineral permit out against the land. So, relying upon that statement, the deal was closed quickly.

The purchasers, getting the property ready to sell, examined the abstract, and found an oil permit already out against the land. That practically destroyed its value for the very purpose for which it had been purchased. Consequently, in about 60 days after the deal was made, Hunter and Collins sued to rescind the trade. They offered a deed to Donoho conveying the 300 acres they had purchased and praying a recovery of the $4,500 they had paid out for that acreage. They recovered judgment accordingly. Upon appeal, that judgment was affirmed by the Court of Civil Appeals.

The verdict of the jury, upon special issues, was as follows:

"Question 1: Did the defendants or either represent to the plaintiffs that there was no permit to prospect for minerals on the lands in question? Answer 'Yes' or 'No.' Answer: Yes.

"Question 2: Were the representations, if any, with reference to the existence of a mineral permit on the land in question true? Answer 'Yes' or 'No.' Answer: No.

"Question 3: Did the plaintiffs rely upon the representations of the defendants, if any, relative to the existence of mineral permits on the lands in question, and were the plaintiffs thereby induced to part with their money? Answer 'Yes' or 'No.' Answer: Yes.

"Question 3A: State whether or not plaintiff would have paid to the defendants the money had not such representations been made by the defendants. Answer: No.

"Question 4: Prior to the time that plaintiff Carl Hunter accepted the deed to the land in controversy and paid to the defendant the money, had he through his own efforts and investigation learned or been informed by others that a mineral permit had been given on said land and placed of record? Answer: No."

[1] It is the contention of plaintiffs in error that, even though they made false statements about the permit, the defendants in error could not recover thereon, because the abstract would have shown the existence of the permit. In other words, it is contended that one can misrepresent a fact and then be held blameless because the record would show the statement to be false. We do not believe this is the law. In this case, a supplemental abstract had not been prepared. Hunter would have insisted upon it, before closing the deal, but for being assured it would show no oil permit. As stated by the Court of Civil Appeals:

"As a matter of course the proper registration of such an instrument imposes constructive notice upon the world, yet the state-

ment. of facts surrounding this transaction lulled the appellee [Hunter] into security."

[2] As our section of the commission has said in several cases, a record will be presumed to carry notice of its contents, where the parties are silent. But our Supreme Court, speaking itself or through the Commission of Appeals, has never said that one could falsify on material matters in such a way as to prevent an examination of the record, and then come in court and say you should have gone to the record and found out we were speaking falsely. We do not believe any such rule will ever be announced, because it would not stand the test of judicial decision.

In this connection we quote as follows from the opinion of our Supreme Court, speaking through Judge Stayton, in the case of Labbe v. Corbett, 69 Tex. 508, 6 S. W. 811:

"The misrepresentation alleged to have been made was one material in character, and, if made, calculated to prevent an examination by the appellant for himself to ascertain the true condition of the sheep, and it related to a matter of which the appellee, from his own statement, had actual knowledge. The rule asserted in the case of Railway Co. v. Kisch, L. R. 2 H. L. 120, under the facts of this case seems to us the true one. It is as follows: 'When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue, * * * for the purpose of driving me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty."' The rule is reasonable and well sustained by authority. David v. Park, 103 Mass. 503; Mead v. Bunn, 32 N. Y. 278; Martin v. Ash, 20 Mich. 166; Risch v. Von Lillienthal, 34 Wis. 256; Roberts v. Plaisted, 63 Me. 339; Mullock [Matlock] v. Todd, 19 Ind. 135; Pom. Eq. 895."

[3, 4] The only other question of any possible difficulty, in this case, it seems to us, is the one discussed by the Court of Civil Appeals in its opinion beginning with the last paragraph on page 8 and running through to the last paragraph on page 11 thereof. That question is this: Can Hunter rescind this trade without returning to Donoho the entire 320 acres which Donoho conveyed in this transaction? It is ordinarily true, of course, that the parties must be placed in statu quo when the remedy of rescission is employed to overturn a fraud. But there are exceptions to the rule, as we shall show. Now in this case Hunter purchased only 300 acres of land.

That was all he ever expected to purchase or ever agreed to buy. He fell in with the plans and requests of Donoho, and, as a matter of form and convenience, took title temporarily to the entire 320 acres, but conveyed off the 20 acres to Anderson at once. This was all done at the request of Donoho so that his real estate broker could be paid his commissions. Therefore Hunter and his partner could return to Donoho only the 300 acres they had retained. This they offered to do by deed tendered into court. Offering to give up the land, they would be entitled to the $4,500 they had paid out for that very land.

If the rule as contended for by plaintiffs in error be the true one, the defrauding parties could purposely render rescission an impossible remedy in almost any case. A little exception could be provided for. The trade could be so arranged that complete rescission would be absolutely impossible. In this case, no injustice is done by requiring Donoho to take the 300 acres back and give up the $4,500 which he had been paid therefor. That amount was paid to him and his agent at his request. Hunter was giving up all he received and everything he was in position to tender back.

If Anderson wanted to keep his 20 acres, that was no concern of Hunter's. What became of the 20 acres was a question between Donoho and Anderson. The courts are open to them to try out any issues.

The correct rule in this connection has been well stated as follows:

"If he (the defendant) has so entangled himself in the meshes of his own knavish plot that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him." Corpus Juris, vol. 9, p. 1210, par. 96.

See, also, the authorities cited in notes 47 and 48 in same paragraph.

This case was fairly tried in the district court and the judgment correctly affirmed by the Court of Civil Appeals. We do not think it necessary to go into any other matters treated by the Court of Civil Appeals. We merely refer to that opinion.

We recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.